Jose **BORRERO ARCE**

v.

**Robert H. FINCH.**

**Civ. No. 248–68.**

United States District Court
D. Puerto Rico.

Dec. 10, 1969.

**1072**

Frank Torres, Ponce, P. R., for plaintiff.

Candita R. Orlandi, Asst. U. S. Atty., San Juan, P. R., for defendant.

## MEMORANDUM OPINION AND ORDER

FERNÁNDEZ-BADILLO, District Judge.

Claimant José Borrero Arce, pursuant to 42 U.S.C. § 405(g), has requested judicial review of the final decision of the Secretary of Health, Education and Welfare denying application for disability insurance benefits and the establishment of a period of disability under the Social Security Act, as amended. In said application plaintiff briefly described his impairments as "diabetes, broken knee" and fixed the date of onset as April 1963. This case was previously remanded, on motion of the Secretary, for further administrative action and a supplemental hearing was held before a different examiner who rendered his decision on September 25, 1968. Plaintiff has filed a Motion to Set Aside the Appeals Council Decision on December 11, 1968 and a Motion for Summary Judgment on January 31, 1969. Both these motions basically set forth the same arguments.

■ The Court's scope of inquiry is focused on determining whether upon considering the entire record the Secretary's administrative findings are based on substantial evidence.

Plaintiff's personal history reveals that he was 44 years old at the time of filing his disability application. He testified at the hearing that he had a third-grade education and could read and write. His work history is that of an unskilled laborer having engaged in agriculture—cutting sugar cane and picking fruits—, construction and finally as a stevedore. On April 3, 1963 while lifting a 100 pound sack of cement he fell, injuring his right knee. Plaintiff never returned to work. He stated that he was unable to perform the duties of a stevedore after the injury and could "not seek a job anywhere else."

The medical evidence on record is abundant, both in the form of reports and oral testimony offered at the hearings. This claimant received early treatment of his knee injury through the State Insurance Fund and on February 18, 1966 the Puerto Rico Industrial Commission increased the disability rating from 10% loss of the physiological function of the right leg on account of the knee to a 33⅓% loss of use of the limb. The Commission resolved that the worker be referred to Vocational Rehabilitation.

Dr. Jorge Bonilla Colón, an orthopedic surgeon, examined claimant on July 21, 1966 and on August 1, 1967 reporting on both occasions the following findings:

(1) Tear medial miniscus, old

(2) Early arthrosis left knee [1]

(3) Diabetes mellitus

---

1. This finding should apparently refer to the right instead of to the left knee. X-rays taken of the *right knee* revealed "slight spurring of patellar poles and slight narrowing of the medial joint space compatible with an early arthrosis. No radiographic report or other mention was made in Dr. Bonilla's examination of the left knee.

(4) Obesity

X-rays of the lumbar spine taken at the 1967 examination revealed a moderate spondylosis manifested by marginal spurring of vertebral bodies. Dr. Bonilla commented in the 1966 report that:

"If his diabetes is well controlled as he says I agree that surgery is the treatment of choice if we want to rehabilitate this relatively young and otherwise healthy individual. As to how soon he could be considered fully recovered this would depend among many other factors, on a well supervised program of physiotherapy of two or three months duration. This patient seems at present reluctant to have surgery because of fear to his diabetes."

Upon examining plaintiff a year later he was of the opinion that the patient's loss of functional capacity had increased "in view of the positive objective findings in his back." He further noted that plaintiff "still refuses surgical treatment to his knee but because of his poor motivation I doubt that this alone would be enough to rehabilitate this man for work * * * He may possibly perform gainfully in some sedentary job if properly trained."

Claimant underwent a thorough physical examination on August 30, 1966 performed by Dr. Francisco C. Porrata, an internist. His general appearance was described as good. Urinalysis, blood tests, X-rays of the chest and an electrocardiogram were taken. Plaintiff had complained of feeling a constant dull pain in the left side of his chest during months. Dr. Porrata reported that the chest pain had none of the characteristics of angina pectoris and that there was no evidence of heart failure. He also made a negative finding as to complications of his diabetic condition. A tonsillectomy was recommended and evaluation by an orthopedic surgeon was advised. Dr. Porrata's diagnoses contained the earlier findings already reported and added "probable osteoarthritis, mild and chronic tonsillitis".

A second exhaustive physical examination was performed upon claimant on June 19, 1967 by Dr. José Q. Santana-Criado, also a specialist in internal medicine. Claimant reported that he was taking Orinase for his diabetes but followed no diet. Dr. Santana made a negative finding as to heart disease and observed that the diabetes mellitus was mild and could be easily controlled. He reported "there had been no change of patients' health condition during the past ten months" and that the diabetes was not a contraindication for surgery if such was indicated at the time.

Concerning the oral testimony offered the record contains that of Dr. Miguel Godreau, internist, and of Dr. Juan Llompart, orthopedic surgeon. Dr. Godreau testified at the first hearing that claimant had been seen by him on three occasions during 1967. He gave the following as fundamental findings in their order of significance:

(1) fractured medial semi lunar cartilage

(2) diabetes mellitus, chronic

(3) hypertrophic arthritis of the upper cervical and lower lumbar spine.

Dr. Godreau stated that when claimant came to see him his diabetic condition was already under control and that surgical treatment of the knee "would be the indicated thing to do here for permanent amelioration." He further stated that plaintiff had "a sufficient degree of hypertrophic arthritis in the lower lumbar spine to incapacitate him for his ordinary work," however, it was his impression that "the right knee is the most important disabling thing in this particular case because the other things can be ameliorated with sedatives and analgesics * * * to a certain degree but the right knee is a permanent condition because he has constant pain there, because of the fractured semi-lunar cartilage in the right knee." There are no reports of the X-rays of the back taken by Dr. Godreau. A medical certificate of May 18, 1967 signed

by Dr. Godreau briefly points out that prognosis is poor, the conditions are permanent and plaintiff "is justified to receive social security benefits on account of his illness and physical disability." There is no medical data to support this conclusion.

Dr. Llompart testified at the 1968 remand hearing as a medical advisor. He stated that he had read the reports of the other physicians and substantially agreed with them one hundred percent in this particular case. During examination by the examiner he said that chronic tonsillitis, unaccompanied by high fever, does not affect an individual's normal activities. Such is plaintiff's condition. He explained that there was no fracture but rather a rupture or tear of the medial meniscus commonly known as a trick knee. He further stated that it was mentioned several times in the record that claimant's diabetes was controlled and uncomplicated. He felt there was no contraindication for surgical correction and would have recommended knee surgery if Borrero Arce were his patient. The fact, testified to by claimant, that he was scheduled for surgery in 1965 and the same was not performed because of his diabetes, was probably due to an uncontrolled condition at that time.[2] Even assuming that claimant were justified in refusing surgery and considering all his impairments, Dr. Llompart observed that he could lift weights to 10 pounds, carry small objects, and engage in work where he would use arm controls plus one leg control.

The reports which have been briefly summarized here constitute the medical evidence obtained on claimant's physical condition. The remainder of the record is composed of the testimony of the vocational consultants adduced at the two hearings.

Mr. Paul Senior testified at the first hearing. Taking into account all the ailments and assuming that surgery would relieve the pain in the knee completely or almost completely, Mr. Senior answered the examiner's questions as to residual capabilities which would enable claimant to engage in substantial gainful activity. He opined that plaintiff had picked the one job in all the economy of Puerto Rico, stevedore, which resulted in most strain to his knee and generally. However, there were specific types of sedentary work available to him locally such as tending a pig and chicken raising project or a fruit and vegetable stand, with the help of Vocational Rehabilitation, tobacco stripper and coffee roaster helper.

Carlos Albizu-Miranda testified as vocational expert at the second hearing. He concluded that there were light to sedentary types of work in the shoe industry—sole cementer, buffer, shoe packer, lacer—and doing bench work in the capacity of linker or stringer at the Ponce Pearl Corporation.

Counsel for petitioner has strongly objected to the testimony offered by Dr. Llompart and Dr. Albizu-Miranda referring to it as "hearsay and self-serving testimony of two government paid witnesses." Administrative hearings are not adversary proceedings. By statutory disposition it is established that "evidence may be received at any hearing before the Secretary even though inadmissible under rules of evidence applicable to court procedure." 42 U.S.C. § 405(b); Hunley v. Cohen, 288 F.Supp. 537 (F.D.Tenn., 1968). Plaintiff was afforded full opportunity to cross-examine these two witnesses at the hearing. This was done by his counsel Mr. Frank Torres. They based their opinion and evaluation on the evidence on record. Dr. Albizu-Miranda further based his testimony on personal investigations of job opportunities conducted by him. There is no ground for concluding that the two witnesses were in any manner partial or inclined to preju-

---

2. Claimant testified that the test for diabetes was made just the day before the operation. On cross-examination by counsel for petitioner, Dr. Llompart declared that "a diabetic patient could be put under control fairly well in a short period of time and be ready for surgery."

dice plaintiff's interests. The acceptance of testimony of medical and vocational experts is a usual practice in this type of proceedings. The mere fact that they are witnesses presented by the government is not enough to infer that claimant was deprived of a fair and impartial hearing. It should further be noted that once a disability benefits claimant makes a showing of inability to return to his previous work the burden of proof shifts to the Secretary to establish the availability of those jobs within the scope of his residual capacity considering his age, educational background, training and experience. Such is the situation before us. The purpose of introducing testimony of the vocational expert is to comply with this burden of proof and the requirement of producing a complete record that covers all the aspects of an individual's claim. Tinsley v. Finch, 300 F.Supp. 247 (D.S.C., 1969).

■■■ The mass of medical evidence bearing upon plaintiff's physical condition substantially demonstrates that a qualifying disability does not exist which would justify granting disability benefits. Claimant's major impairment has been repeatedly found to be remedial. His condition could be greatly improved by knee surgery which has been recommended without danger to him since the medical evaluations indicate that his controlled diabetes is not an impediment to surgical correction. An impairment which can reasonably be remedied by treatment cannot be the basis of a disability claim. Deel v. Gardner, 288 F. Supp. 105 (W.D.Va., 1968); Stillwell v. Cohen, 411 F.2d 574 (5th Cir., 1969). Considering all of plaintiffs maladies in combination, the Court understands that there is substantial evidence on the record to uphold the Secretary's finding that these do not prevent him from engaging in substantial gainful activity. Claimant must show that his physical impairments have caused a functional limitation that precludes him not only from his past vocational activity but also from engaging in any other substantial gainful employment. Tarleton v. Finch, 303 F.Supp. 12 (S.D.Ala., 1969). The Court, convinced that there is substantial evidence to support the Secretary's findings is bound by them and his decision must be affirmed.

Accordingly, it is hereby ordered, adjudged and decreed that the Motion to Set Aside the Appeals Council decision and the Motion for Summary Judgment filed by plaintiff on December 11, 1968 and on January 31, 1969 respectively are hereby denied.