**Francis A. COLLIER, Plaintiff,**

v.

**Elliott L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.**

Civ. A. No. 70–C–114–A.

United States District Court,
W. D. Virginia,
Abingdon Division.

May 16, 1972.

Frederick W. Adkins, Norton, Va., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION and JUDGMENT

DALTON, District Judge.

Francis A. Collier, the claimant, brings this action under 205(g) of the Social Security Act, 42 U.S.C.A. § 405 (g) for judicial review of the final decision of the Secretary of Health, Education and Welfare, denying claimant the establishment of a period of disability and disability insurance benefits under §§ 216(i) and 223 of the Act, as amended, 42 U.S.C.A. §§ 416(i) and 423. After remand from this court, the Appeals Council rendered the final decision of the Secretary on July 14, 1971, when it adopted the recommended decision of the hearing examiner dated June 11, 1971. The sole issue in this proceeding is whether the Secretary's decision is supported by substantial evidence, 42 U.S. C.A. § 405(g); Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

Claimant filed his application for disability insurance benefits on January 29, 1969, alleging disability from December 18, 1968, because of "pneumoconiosis—some kind of lung disease". The application was denied initially, and upon reconsideration. By request a hearing was conducted in Norton, Virginia, on April 24, 1970, at which claimant, represented by counsel, appeared and testified; Polly Collier, the claimant's wife, also testified. Based upon the evidence of record, the hearing examiner held that Mr. Collier had failed to show by competent medical evidence that he was suffering from an impairment, or impairments, of such severity as to preclude him from engaging in any substantial gainful activity at any time for which his application was effective. Mr. Collier's request for review was denied by the Appeals Council.

This court remanded the case to the Secretary in order to develop further evidence of his claimed infirmities. The Appeals Council subsequently adopted the recommended decision of the examiner denying disability benefits, based upon evidence developed in a supplemental hearing. Because claimant meets the special earnings requirements at least through December 31, 1973, he must establish that his disability began prior to July 14, 1971, when the Secretary's decision became final. Dye v. Finch, 299 F.Supp. 481 (W.D.Va.1969).

The relevant facts are not in dispute. Mr. Collier is fifty-two years old and lives with his wife and three children near Big Stone Gap, Virginia. Although he apparently reached the eleventh grade, he did not have sufficient credits to be graduated from high school. He dropped out of school at age seventeen to work in the coal mines, where he has worked almost continuously for more than thirty years, except for a two and one half year service in the Armed Forces during World War II. Allegedly because of his disabling condition, he left the mines on December 10, 1968, and has not worked since.

Much of claimant's medical problems stem from his respiratory ailments. The earliest medical report is a series of clinical notes and hospital records from

the Appalachian Regional Hospitals, Inc., and furnished by Dr. J. S. Henry, the attending physician. On January 8, 1968, the claimant was X-rayed by Dr. J. M. Straughan, a radiologist, who diagnosed fibrosis, bronchitis and slight emphysema. On March 14 Dr. Henry treated the claimant's bronchitis with medication, and on May 16 he similarly treated him for chest pain. Although Dr. Henry then suspected possible recurrent angina pectoris, he noted that the claimant's chest was clear upon examination. A subsequent x-ray examination, on May 21, revealed no change in the findings since the earlier test.' The next day the claimant reported that his pains had subsided, and it was determined that his lungs were again clear. However, on June 13 he returned to the clinic, complaining of chest and arm pains. Dr. Henry noted that the claimant was in no acute distress, his lungs were clear and his heart normal. A clinical impression of pleurisy was made, for which medication was prescribed. On November 13 the claimant complained of increased difficulty with exertional dyspnea. Again the lungs tested clear, but Dr. Henry, suspecting silicosis, referred his patient to Dr. W. F. Schmidt.

During the consultation the claimant stated that he first noted shortness of breath in 1955, from which time it had gradually increased in intensity. He stated that he had experienced frequent respiratory illnesses, and had suffered occasional fleeting chest pains, but he had never coughed blood. Running was difficult; walking was not, but his respiratory problems had caused him to miss one or two days from work each month, and he could not perform as well at work as the other men. Dr. Schmidt determined *inter alia* that the claimant's heart was normal except for a fast beat. Pulmonary function studies showed his vital capacity as 98% of normal without bronchodilator, and 100% with bronchodilator. Maximum breathing capacity was 85% of normal with bronchodilator,

100% of normal without. Upon extensive physical examination the doctor noted his impression:

1. Soft Coal Worker's Pneumoconiosis ('black lung' disease)—Category I–p.

2. Recurrent bronchitis with bronchospasm.

3. Diabetes Mellitus—poor control.

4. History of hypertension.

He further suggested a trial period of nitroglycerin for the chest pain, and he thought that a Master's Two-Step Test should be administered.

Earlier, on December 30, the claimant had visited Dr. Henry, complaining of chest pains. He also indicated his desire to stop work, at least in the mines. Dr. Straughan's x-ray examination revealed "fibrosis, otherwise normal chest". Dr. Henry's entry of January 7, 1969, shows that the claimant's condition was unchanged, and it was advised that he return to work.

On January 9, 1969, the claimant was admitted to the Appalachian Regional Hospital in order to determine whether or not he actually had diabetes. In the discharge summary of January 15, Dr. Henry reviewed the medical history previously reported by Dr. Schmidt, adding that the claimant, so far as he knew, had never had pneumonia or tuberculosis. The physicians, as noted by Dr. Henry, concurred in the diagnoses of "pneumoconiosis, category I–p" and "recurrent bronchitis". The clinical tests indicated however that the claimant did not have diabetes, although he was deemed a "potential" diabetic. Dr. Henry also concluded that the asserted hypertension was mild, for which no treatment was justified. An electrocardiogram and a Master's Two-Step Test both revealed a normal heart with a rapid beat. The doctor stated that this was characteristic of coronary artery disease. His final diagnosis:

1. Soft coal worker's pneumoconosis (sic), category I–p.

2. Chronic recurrent bronchitis with bronchial spasm.

3. Potential diabetes mellitus, not positive at this time.

4. Hypertensive cardiovascular disease, moderate.

After responding well to treatment, the claimant was released from the hospital with prescriptions for various medications.

Over the next six months the claimant returned to the clinic several times for treatment of minor difficulties, all of which were apparently corrected. In May 1969 he was advised to discontinue some of the medicines because they increased his "jitteriness". The next month he reported that he felt very well, and he indicated his intention to seek Social Security benefits.

On June 27, 1969, at the request of the State agency, the claimant was examined by Dr. Anthony Leger at the Daniel Boone Clinic in Harlan, Kentucky. The claimant reiterated his complaints of chest pain, coughing and wheezing, and shortness of breath. He told Dr. Leger that sitting or walking on level ground did not cause him discomfort, but that he could not do strenuous activity, including walking up steep grades, without having to rest. The findings of the physical examinations and studies, including those of the heart and lungs, were normal. Dr. Leger wrote:

Diagnosis:

1. American Heart Assosiation (sic) Classification would be Functional Class I, Therapeutic Class 1. No evidence of Organic heart disease at this time.

2. Patient may have some mild obstructive pulmonary emphysema with an element of bronchitis but I certainly cannot determine this from any objective findings during the physical examination. He coughs very little and raises scanty sputum so there cannot be too much of a bronchitic componant.

3. I would think that the left anterior chest pain would be on a musculo-skeletal origin with an added componant of anxiety.

"To sum it up, I think this patient appears to be a healthy male. He has mild hypertension, probably essential, and has no evidence of any effect of the hypertension on the retinal vessels, heart, or kidneys. . . ."

At the present time, the patient is receiving Peritrate and Nitroglycerin and the response to Nitroglycerin, in which the pain takes 10 minutes to be relieved, is quite uncharacteristic of anginal pain."

An electrocardiogram and a Master's Two-Step Test conducted at the Clinic in September 1969 showed that the claimant's heart was normal. Similarly, an x-ray examination by Dr. Straughan in November 1969 revealed no change since the earlier tests.

Again at the request of the State agency, the claimant was examined in Norton, Virginia on February 24, 1970, by Dr. U. S. Gonzalez, an internist with a subspecialty in pulmonary and cardiovascular diseases. The claimant explained to him that he had quit work in December 1968, and since that time his condition had not become noticeably worse; he further noted that he does no work except for non-strenuous activities around the house. The examination, including the heart and lungs was essentially negative. Pulmonary function studies showed that his vital capacity was 85% of normal and his measured breathing capacity after bronchodilator was 62% normal. His impression was stated as: "1. Pulmonary fibrosis and emphysema. 2. Osteoarthritis."

After remand by this court, the claimant was examined by Dr. L. J. Fleenor on March 19, 1971, in order to secure more recent evidence of his condition. In a letter report dated March 22, Dr. Fleenor noted that the claimant had a prediabetic condition and high blood pressure, neither of which, if properly controlled, could affect his ability to work or his life expectancy. The pneumoconiosis, however, caused moderate

breathing limitations. He summarized, in part:

> I believe that the patient's physical condition is such that he is unable to perform heavy manual labor such as is required in the mines. At any rate, he should absolutely not be exposed to any kind of occupational dust or noxious fumes. . . . I believe that the patient is physically capable of doing light work, such as would be required for clerking or desk type duties.

This medical report appears to be the most recent.

At the original hearing, and at the hearing after remand, Mr. Collier testified that although he quit work in 1968, he still cannot do strenuous activity. Pushing a lawnmower or even walking fast, for example, necessitate frequent rest periods. Sitting and walking slowly, while they do not tax his breathing functions, nevertheless cause swelling of his ankles. He injects medicines regularly in order to sleep (phenobarbital) and to prevent nightly coughing spells. On the other hand, he apparently no longer, or very rarely, takes medication for his alleged cardiac problems. He drives a car and attends to his own personal needs, but rarely attends social and church events. Finally, he noted that he had received disability awards from the Virginia Industrial Commission (Workmen's Compensation) and from the Veterans Administration. He was not sure that he could perform jobs requiring light activity. Commensurate with her observations and knowledge, Mrs. Collier confirmed her husband's testimony.

At the second hearing, Mr. N. E. Hankins, the vocational expert, testified that he had studied the record and had listened to and observed plaintiff at the hearing. It was assumed as foundation for his opinion that the claimant suffered mild arthritis in his shoulder and that his other ailments precluded all forms of strenuous activity, including prolonged standing, walking, stooping or bending, and lifting heavy objects. Mr. Hankins surmised that in spite of these limitations, the claimant could perform light work, and suggested several jobs, sedentary in nature and with which he was personally familiar: checker in a metal parts manufacturing firm, inspector in a medical glove manufacturing company, and line assembler in an electrical coil factory. On the less restrictive assumption that he could stand or walk slowly for long periods and lift objects up to twenty pounds, the witness suggested other jobs: line assembler of radio or television sets; taxidriver. Conversely, if it were assumed that claimant suffered shortness of breath and became enervated from very minimal exertion, Mr. Hankins opined that he could perform none of these jobs on a sustained basis.

█ In this proceeding the initial burden is upon the claimant to prove that he is under a disability as defined in the Act, 42 U.S.C.A. § 416(i), Cyrus v. Celebrezze, 341 F.2d 192 (4th Cir. 1965), Ison v. Richardson, 327 F.Supp. 619 (W.D.Va.1971); it is not the burden of the Secretary to make an initial showing of non-disability.

Establishment of a disability which would entitle the claimant to benefits under the Social Security Act is a two-step process. First, there must be a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months; and, second, there must be a factual determination that the impairment renders the plaintiff unable to engage in *any* substantial gainful activity. 42 U.S.C.A. § 423(d) (1) (A); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966).

The court feels that Mr. Collier has failed to sustain his burden. True, the medical reports substantiate, in varying degrees the respiratory and other ailments of which he complains. It is equally clear however that some of these ailments are reasonably remedial, in which case they cannot support a claim of disability. Stephens v. Ribicoff, 307 F.2d 304 (4th Cir. 1962); Borrero Arce v. Finch, 307 F.Supp. 1071 (D.P.R.1969).

Several of the reports, for example, indicated that the chest pains, the ankle joint swelling, and the shoulder arthritis could be ameliorated by medications. Moreover, Dr. Fleenor noted no complaint about arthritis, and Dr. Henry thought that the hypertension was not so severe as to require treatment. Dr. Fleenor also surmised that the prediabetic condition and the high blood pressure did not constitute a threat to the claimant's ability to work or to his life expectancy. Similar conclusions may be properly inferred from the earlier reports of Drs. Henry and Schmidt. In any case, it appears that many of these aforementioned difficulties are minor.

■ Mr. Collier's most serious problems arise from his respiratory condition, the debilitating effects of which, however, are unclear. The claimant's statements at the hearing that he could not sit, stand or walk for long periods without discomfort conflict with his statements to the physicians. He told Dr. Schmidt that he could not run more than fifty yards without having to stop, but he had no trouble walking. In addition, he told Dr. Leger that he could walk over a half mile. He never complained to any physician that prolonged standing caused discomfort. The Secretary is not required to accept as true the claimant's self-serving statements of discomfort, Hamlin v. Finch, 313 F.Supp. 1128 (W.D.Va.1970), especially where, as here, the statements are highly contradictory.

Mr. Collier does suffer from pneumoconiosis and some bronchitis, and it is not disputed that he can no longer work in the mines or engage in other heavy manual labor. Yet, no doctor, testified nor is it otherwise apparent from the record, that these conditions precluded him from engaging in lighter work activities. Indeed, Dr. Fleenor concluded that he could indeed engage in light or sedentary work, and it is particularly significant that his tests showed the highest degree of breathing dysfunction. Thus, the medical evidence clearly established that his impairments, singly or in combination, were not of such severity as to preclude *all* substantial gainful work.

Based on the assumption that the claimant could perform at least light or sedentary work, the vocational expert testified that considering the claimant's age, education and experience he could engage in many jobs in the national economy, of which several existed in the area where the claimant lived. Moreover, the hearing examiner concluded that some of the manipulative skills the claimant had acquired as a crane operator in the Army and as a shuttle car operator in the mines would easily transfer to other more sedentary machine-operating jobs. Since it has been shown that Mr. Collier can engage in other, light forms of gainful activity, he has failed to establish a disability within the meaning of the Act. E. g. Wells v. Finch, 418 F.2d 1247 (4th Cir. 1969).

■ Reliance is also placed upon the claimant's receipt of disability benefits or pensions from the Veterans Administration and the Virginia Industrial Commission. Disability awards are entitled to some consideration. Crockett v. Cohen, 299 F.Supp. 739 (W.D.Va.1969). However, the requirements of each of the agencies differ from those prescribed by the Social Security Act, so that a finding of disability under those programs is not binding upon the Secretary. Nelms v. Gardner, 386 F.2d 971 (6th Cir. 1967); Darter v. Cohen, 299 F. Supp. 473 (W.D.Va.1969). These awards do not alter the conclusion of non-disability.

■ This court cannot substitute its judgment for the Secretary's if his decision is supported by substantial evidence, that is, evidence that a reasonable mind would accept as sufficient to support a particular conclusion. 42 U.S. C.A. § 405(g); Laws v. Celebrezze, supra; Underwood v. Ribicoff, supra. Within this scope of review, the court is convinced that the Secretary's decision denying the claimant's application is

supported by substantial evidence. Accordingly, it is ordered that the defendant's motion for summary judgment be granted, and this case is hereby dismissed.