John M. PENIX, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of
Health, Education and Welfare,
Defendant.

No. S 75–149.

United States District Court,
N. D. Indiana,
South Bend Division.

Nov. 6, 1978.

**32**

G. C. Perry III, Paintsville, Ky., Richard L. Swartz, Wabash, Ind., for plaintiff.

David T. Ready, U. S. Atty., South Bend, Ind., for defendant.

## ORDER

On May 11, 1976 the defendant, Joseph A. Califano, Jr., Secretary of Health, Education and Welfare (hereinafter referred to as defendant), filed a Motion for Summary Judgment. On May 4, 1977 the plaintiff, John M. Penix, (hereinafter referred to as plaintiff), filed his Motion for Summary Judgment. On January 19, 1978 this Court remanded the case to the Secretary for proceedings consistent with the Court's opinion. Subsequent to said opinion, both parties supplemented their Motions for Summary Judgment.

After a careful review of the record, this Court now DENIES defendant Secretary's Motion for Summary Judgment and GRANTS plaintiff's Motion for Summary Judgment.

## MEMORANDUM

### STATEMENT OF THE CASE

ALLEN SHARP, District Judge.

This is an action for judicial review of a final decision of the defendant Secretary of the Department of Health, Education and Welfare by which the plaintiff was denied benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended (hereinafter referred to as the Act). 30 U.S.C.A. §§ 901 *et seq.* Under the Act, benefits are payable to living miners who are totally disabled due to pneumoconiosis arising out of coal mine employment and to surviving dependents of a miner who was receiving benefits at the time of his death or who died, or was totally disabled, due to pneumoconiosis. 30 U.S.C.A. § 921(c)(1).

### ADMINISTRATIVE AND JUDICIAL PROCEEDINGS

Plaintiff filed an application for benefits under the Act on May 3, 1973 (Tr. 52–55); and was denied initially on September 26, 1973 (Tr. 56–58), and on reconsideration on

July 19, 1974 (Tr. 62–64), by the Bureau of Disability Insurance of the Social Security Administration. Plaintiff requested a hearing on August 10, 1974 (Tr. 16).

A hearing was duly held on April 15, 1975 (Tr. 18–51), in which plaintiff and his attorneys appeared before an Administrative Law Judge, who, after considering the case *de novo,* found that plaintiff was not entitled to benefits under the Act, as amended (Tr. 6–12).

The Appeals Council, after consideration of all the evidence of record, approved the decision on July 28, 1975 (Tr. 3). The Administrative Law Judge's decision thus became the final decision of the Secretary of Health, Education and Welfare.

On August 29, 1975 the plaintiff filed a complaint alleging that the defendant Secretary's decision was not supported by substantial evidence. Subsequently, both parties filed cross-motions for summary judgments. On January 19, 1978 this Court ruled that the plaintiff was entitled to the ten year presumption rule (C.F.R. 410.-490(b)) and remanded to the Secretary for further proceedings consistent with the Court's opinion. Subsequent to said remand, both parties filed additional material supporting their respective positions.

## JURISDICTION

The Act provides for judicial review of determinations made by the Secretary under the same terms as are provided by statute under Title II of the Social Security Act. Specifically, section 413(b) of the Act (30 U.S.C.A. § 923(b)) incorporates by reference sections 205(g) and 205(h) of the Social Security Act, 42 U.S.C.A. §§ 405(g) and 405(h). Section 205(g) provides, *inter alia* that "(a)s part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based" and that "(t)he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or with or without remanding the case for a rehearing."

It also provides that "(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." Section 205(h) provides that the review under subsection (g) is the exclusive means for judicial review.

## STANDARDS OF REVIEW

■ It is the responsibility of the Secretary under the Act and the Social Security Act to weigh the factual evidence and to resolve any conflicts therein. Judicial review of the Secretary's determinations is limited in scope by section 413(b) of the Act, 30 U.S.C.A. § 923(b), incorporating by reference section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), which provides that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." The Supreme Court of the United States has held that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). It is not the function of the court in a judicial review of such an administrative action to appraise the evidence *de novo.* As the court stated in *Moon v. Celebrezze,* 340 F.2d 926, 930 (7th Cir. 1965):

> "We must apply the rule governing judicial review that the courts are limited to a determination of whether the record as a whole contains substantial evidence which supports the administrative decision. They may not resolve conflicts in the evidence. They may not decide questions of credibility. The Secretary's ultimate factual determinations stand if they are supported by such relevant evidence, when considered in the context of the entire record, as a reasonable mind might accept as adequate to support a conclusion."

*Lahr v. Richardson,* 476 F.2d 1088 (7th Cir. 1973); *Lechelt v. Cohen,* 428 F.2d 214 (7th Cir. 1970).

■ The conclusiveness of the Secretary's findings of fact applies as well to inferences reasonably drawn from that evi-

dence. *Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973); *Vineyard v. Gardner,* 376 F.2d 1012 (8th Cir. 1967); *Beane v. Richardson,* 457 F.2d 758 (9th Cir. 1972), cert. den. 409 U.S. 859, 93 S.Ct. 144, 34 L.Ed.2d 105 (1972); *Trujillo v. Richardson,* 429 F.2d 1149 (10th Cir. 1970); *Reyes v. Secretary of Health, Education and Welfare,* 155 U.S.App.D.C. 154, 476 F.2d 910 (1973).

The Secretary's decisions based on a similar analysis in comparable cases under the Act have been upheld in *Downing v. Weinberger,* 390 F.Supp. 1384 (S.D.Ind.1975); *Cox v. Weinberger,* 389 F.Supp. 268 (E.D. Tenn.1975); and *Rainey v. Weinberger,* 388 F.Supp. 1277 (E.D.Tenn.1975).

## ISSUE

The only issue before the Court is whether there is substantial evidence in the record of this case to support the final decision of the defendant Secretary that plaintiff was not entitled to benefits under the Act.

## HOLDING

The Court having reviewed the pleadings and transcript of the record, DENIES the defendant Secretary's Motion for Summary Judgment and GRANTS plaintiff's Motion for Summary Judgment.

## STATEMENT OF FACTS

In his application for miner's benefits under the Act, plaintiff stated he was born on May 18, 1920, completed the tenth grade, and worked in coal mines for about ten years ending in 1953 as a loader and timberer. He described his disability as "black lung and cirrhosis of the liver"; and indicated that he has not filed for social security benefits because of his work activity (Tr. 52). He has approximate yearly earnings of $5000.00 and has one minor child (Tr. 5354). He has never filed a claim for workmen's compensation and to do so now would be futile (Tr. 12).

Plaintiff's social security record (Tr. 65–69) reflects almost continuous earnings from the Amherst Coal Company for the period 1946 through the second quarter of 1952 with none thereafter. At the Amherst Coal Company plaintiff operated a loading head where he pushed a button to release coal from a loading head so that it would fall into shuttle cars (Tr. 29–31).

The record also shows earnings from the Wood Coal Company of $11.80 in 1943 and $1.00 in 1944. Other earnings prior to 1946 were reported by Ford Motor Company in 1943 and 1944, and National Tube Company in 1944 and 1945; and do not suggest the existence of other coal mine employment.

Plaintiff testified that in addition to work reflected in the Administration's records, he had approximately five years underground coal mine experience as a shovel loader at Woods Coal Company in the period 1939 through 1944 and a short period for Chip Whitney's trunk mines in the mid-1940's.

On January 19, 1978 this Court held that the plaintiff was entitled to the ten year presumption pursuant to C.F.R. 410.490(b).

From 1952 until he stopped working in 1974 and applied for disability benefits under social security, plaintiff worked in the furniture manufacturing industry (Tr. 38–48). A copy of his disability determination under social security shows he was found to be disabled effective August 25, 1974 due to chronic obstructive lung disease with pulmonary emphysema (Tr. 108).

## DISCUSSION

This Court holds that the Secretary's decision is not supported by substantial evidence for the following reasons.

## DOCTORS' REPORTS

The medical tests and reports submitted do not establish that the plaintiff did not have pneumoconiosis as the defendant Secretary contends. The medical evidence submitted for review is at best conflicting and falls far short of being substantial. The tests in sum are as follows:

An x-ray film of plaintiff's chest taken June 1, 1973 was read by Dr. H. Joseph Cronin, specialist in radiology and certified

reader as negative for any evidence of pneumoconiosis. , Five readings of a film taken February 11, 1974 include impressions of "pneumoconiosis, stage 2" by Dr. Ernest E. Musgrave, "consistent with pneumoconiosis, stage 1", by Dr. Richard O'Neill, and "pneumoconiosis", "yes", by Dr. Ilona D. Scott. The other two readings by Dr. Meyer W. Jacobson and Dr. Stanley S. Siegelman disclosed no evidence of pneumoconiosis. On April 14, 1975 Dr. Robert E. Roe examined another x-ray which showed pneumoconiosis, state ½p and flattening of the diaphragms.

As to the pulmonary function studies performed by the plaintiff, these tests do not produce any conclusive finding that the plaintiff did not suffer from pneumoconiosis.

Pulmonary function studies were performed at Davis Clinic on August 8, 1973 and reported upon by Dr. John D. Pattison, specialist in internal medicine and forensic pathology (Tr. 9). Dr. Pattison reported a one-second forced expiratory volume (FEV1) of 1.895 liters and maximum breathing capacity (also known as maximum ventilatory volume—(MVV) of 79.4 liters per minute at a height of 5 foot, 7 inches.

These results fall far short of the table of values reflected in 20 C.F.R. 410.490 which plaintiff is entitled to as a result of being employed in the mines, for at least ten years (see this Court's opinion January 19, 1978). This would indicate pneumoconiosis.

A second test of breathing studies was performed at Paintsville Clinic on July 15, 1974 (Tr. 102–103). Dr. James E. Vanhoose reported that these studies disclosed an FEVI of 2.8 liters and an MVV of 92 liters per minute at a height of 69 inches. The patient's comprehension, cooperation and physical ability were all reported to be good. This test does meet the criteria set forth in 20 C.F.R. 410.490 and would therefore indicate that the plaintiff did not have pneumoconiosis.

█ This Court notes that many of the medical tests were conducted and submitted after the Secretary's jurisdictional cutoff date of June 30, 1973. Although medical examinations may be conducted after the jurisdictional cutoff date of the defendant Secretary, it may still be relevant to the essential issue of whether a claimant was totally disabled due to pneumoconiosis prior to said date. *Begley v. Mathews,* 544 F.2d 1345 (6th Cir. 1976); *Mullins v. Mathews,* 414 F.Supp. 874 (W.D.Va.1976); *Wallace v. Mathews,* 412 F.Supp. 233 (W.D.Va.1975). This Court holds that medical evidence submitted after said cutoff date is relevant to plaintiff's claim against the defendant Secretary due to the progressive nature of the disease.

█ The defendant contends that even if all the medical evidence is considered it is at best conflicting and it is for the Secretary to resolve such conflicts. This principle is upheld in *Padavich v. Mathews,* 416 F.Supp. 1229 (S.D.Iowa 1976); *Downing v. Weinberger,* 390 F.Supp. 1384, 1387 (S.D.Ind.1975). In black lung actions such as these it is not the function of this Court to reevaluate all evidentiary conflicts. *Padavich,* supra. While this Court recognizes this principle of law, the medical evidence submitted in the case at bar is so conflicting and diverse that it can hardly meet the standard of substantial evidence, *Richardson,* supra, to support the Secretary's decision.

### PLAINTIFF'S WORK RECORD SUBSEQUENT TO HIS COAL MINE EMPLOYMENT

The plaintiff was forced to quit the mines in 1952 because he was unable to get his breath (Tr. 34). Since quitting the mines, plaintiff has held only a couple of jobs doing relatively light work in a furniture factory (Tr. 38–41). The 1977 Black Lung Benefits Reform Act (P.L. 95–239) (hereinafter the 1977 Act) has liberalized the definition of "total disability." Under the previous legislation, total disability was defined as follows:

"A miner is 'totally disabled' if his pneumoconiosis prevents him from engaging in gainful work in the immediate area of his residence requiring skills and abilities

**36**

comparable to those of any work in a mine or mines in which he previously engaged with some regularity and if his impairment can be expected to last for at least twelve months. 20 C.F.R. § 410.-412(a)(1)(2)."

Under the 1977 Act, Section 2(c) changes the standard defining total disability from the previous standard to the following:

"(A) in the case of a living miner, such regulations shall provide that a miner shall be considered totally disabled when pneumoconiosis prevents him or her from engaging in gainful employment requiring skills and abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity and over a substantial period of time."

Plaintiff's testimony at the hearing shows that the work he did was particularly dusty, with dust gathering in his lungs constantly. While inside the mine, he ran a machine that dumped coal for an overhead loader into the coal cars (Tr. 30–31). Such a process raised a terrific amount of dust, exposing the plaintiff to more dust than even most coal miners. Since quitting the mines the plaintiff has held only a couple of jobs, doing relatively light work in a furniture factory. The plaintiff now can only do light housework.

The issue before the Court is whether or not the plaintiff's employment subsequent to the coal mines is of a kind that requires skills and abilities comparable to the mines with some regularity and over a substantial period of time. (Section 2(c) 1977 Act, supra).

■ This Court holds the plaintiff's work record subsequent to the coal mines comes within the definition of Section 2(c) of the 1977 Act, supra. Plaintiff's work in a furniture factory is far different from the heavy and dusty work he experienced in the coal mines. Therefore, the plaintiff is totally disabled within the meaning of Section 2(c) of the 1977 Act.

PLAINTIFF'S SOCIAL SECURITY DISABILITY

A third type of evidence not adequately accounted for by the Secretary was the fact that the plaintiff was determined to be disabled by the Social Security Administration on November 27, 1974 (Tr. 107). If the disability were for blindness or arthritis, or something of that nature, it would not be relevant to this case. But, the diagnosis was for pulmonary emphysema and fibrosis, lung conditions that have virtually indistinguishable symptoms from coal miner's pneumoconiosis. The determination was made in Wabash, Indiana, an area where coal miners' pneumoconiosis is not prevalent. What is diagnosed as emphysema there would probably be more precisely diagnosed as coal miner's pneumoconiosis.

■ It is well recognized that the defendant Secretary is not bound by the determination of disability by another agency. *Collier v. Richardson,* 344 F.Supp. 768 (D.C.Va. 1972). However, the determination of another agency is entitled to some weight.

The comment in *Cutler v. Weinberger,* 516 F.2d 1282, 1286 (2d Cir. 1975), has pointed application here:

"While the determination of another governmental agency that a social security disability benefits claimant is disabled is not binding on the Secretary, it is entitled to some weight and should be considered. See *Robinson v. Richardson,* 360 F.Supp. 243, 249 (E.D.N.Y.1973); *Zimbalist v. Richardson,* 334 F.Supp. 1350, 1355 (E.D. N.Y.1971); *Pendergraph v. Celebrezze,* 255 F.Supp. 313, 321 (M.D.N.C.1966)."

■ This Court finds this determination most persuasive to the claim at bar. Plaintiff's state disability award was for a medical condition, not only vastly similar to pneumoconiosis, but symptomatic of it. This Court views this as further evidence of pneumoconiosis.

CONCLUSION

■ Therefore, after a careful review of the record, this Court now holds that the defendant Secretary's decision is not sup-

ported by substantial evidence, *Richardson,* supra. The plaintiff has established total disability beginning prior to July 1, 1973 consistent with the teaching of *Lawson v. Mathews,* 406 F.Supp. 1283 (E.D.Tenn. 1975); *Bush v. Weinberger,* 399 F.Supp. 182 (E.D.Ky.1975) and *Mullins v. Weinberger,* 397 F.Supp. 17 (N.D.W.Va.1975).

Accordingly, it is ORDERED that the Secretary's Motion for Summary Judgment be and the same hereby is DENIED. It is further ORDERED that the plaintiff's Motion for Summary Judgment be, and the same hereby is, GRANTED.

It is further ORDERED that counsel for defendant shall file with this Court a report stating the benefits to be paid to the plaintiff pursuant to this judgment order, including specifically the amount of the initial payment to be made to the plaintiff pursuant to this judgment. A copy of such report shall be furnished to counsel for the plaintiff. After the receipt of said report, counsel for the plaintiff may within 30 days file with this Court a petition for the approval and allowance of a fee for representation before this Court pursuant to Section 206(b)(1) of the Social Security Act as Amended (Sec. 332 of P.L. 89–97). No fee for such representation shall be paid to or received by the attorney for the plaintiff other than the amount approved and allowed by this Court pursuant to such petition, and this case shall remain upon the docket for the purpose of considering such petition.

So Ordered.