Arthur R. DUNLAP for Daniel S. Dunlap, Appellant,

v.

Patricia Roberts HARRIS, Secretary of Health, Education and Welfare, Appellee.

No. 80–1617.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1981.

Decided June 5, 1981.

---

Michael R. Bamvakais, Edwin J. Kohner, St. Louis, Mo., for appellant.

Robert D. Kingsland, U.S. Atty., Bruce D. White, Asst. U.S. Atty. (argued), St. Louis, Mo., for appellee.

Before BRIGHT, HENLEY and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

In this social-security case Daniel S. Dunlap appeals from the District Court's decision upholding the Secretary's finding that he was not under a disability on his twenty-second birthday, the last date he had insured status for purposes of obtaining child's disability benefits on the earnings account of his father, Arthur R. Dunlap. 42 U.S.C. § 402(d). In order to prevail, Daniel must show that he was under a disability as defined by the Social Security Act commencing at a time on or prior to July 19, 1976, the day he became 22. The Secretary's decision is conclusive if it is supported by substantial evidence.

Claimant's application was denied by the Secretary on initial consideration and on reconsideration. On February 6, 1979, a hearing was held at plaintiff's request, at which Daniel S. Dunlap, his mother, June M. Dunlap, and a vocational expert testified. On March 20, 1979, the administrative law judge rendered a written opinion unfavorable to plaintiff, finding that plaintiff had not been under a disability at any time prior to or on his twenty-second birthday. His decision was affirmed by the Appeals Council, and plaintiff filed a complaint in the United States District Court for the Eastern District of Missouri. The case was referred to United States Magistrate William S. Bahn, who recommended a decision for the Secretary. After objections were filed by the plaintiff, United States District Judge H. Kenneth Wangelin granted summary judgment to the Secretary, and plaintiff filed a timely notice of appeal.

Daniel S. Dunlap's disability claim is based on a mental condition which has variously been diagnosed as manic-depressive disease—depressed type; severe anxiety neurosis; schizophrenia, schizo-affective type; and personality disorder, passive-aggressive with chronic depression. There is no claim that plaintiff suffers or suffered from any serious physical ailments. A severe mental impairment is, of itself, sufficient to support an award of disability benefits. The mere existence, however, of mental disturbance is not *per se* a disability within the meaning of the Act. The appropriate test is whether the mental impairment is of such severity that plaintiff cannot, or could not on his last eligibility date,

engage in any substantial gainful employment. *Corbin v. Califano*, 481 F.Supp. 699 (W.D.Mo.1979). A nondisabling condition at age 22 which later develops into a disability is not sufficient as a basis for child's disability insurance benefits. *Reading v. Mathews*, 542 F.2d 993 (7th Cir. 1976).

The administrative law judge concluded that the claimant was suffering from a medically determinable mental condition which did not reach disability proportions until after the age of twenty-two. Claimant's major contention on appeal is that this determination is not supported by substantial evidence because the Secretary did not present any evidence as to his mental condition prior to his twenty-second birthday.

We will summarize the evidence. Daniel S. Dunlap was 24 years old at the time of the hearing. He had reached his 22nd birthday on July 19, 1976. His mental and emotional problems have appeared periodically throughout his life beginning at age seven. Because of emotional outbursts he was placed in special education classes at the age of seven and remained there until age eleven. At that point he went back to regular public schools, making satisfactory academic progress through the eleventh grade. He was never a disciplinary problem. After his grades fell very low, he dropped out of school in the twelfth grade and was never graduated.

He attended vocational-rehabilitation training three times. He was reported to be capable and had good work habits when assigned to a task which he enjoyed. After his second period of training he was placed in a pizza parlor making pizzas. He quit after four days because he said he did not like the work and did not like the pay. Later he worked as a dishwasher for three days. He quit that job also because he did not like the work. When asked at the hearing before the administrative law judge why he thought he could not work, he replied that he could not handle pressure and that he was not like other people who could continue to work at a job they did not like. He showed interest in jobs which would involve coins, which he collects, or in the music industry.

Claimant testified that he plays records, watches television, or runs errands for his parents during the day. At night he goes out two or three times a week with friends to a tavern or a disco. Mr. Dunlap lives with his parents, both of whom have serious medical problems, and his older brother, who is also unemployed and has a history of mental illness. Mr. Dunlap's mother testified that he had attempted suicide two times, once when he was eighteen and again several years later. Both attempts were by drug overdose. When asked if she had encouraged him to get a job, she said that she hadn't tried to push him, because he was not the type of person who could be pushed.

A vocational expert whose specialty is the placement of persons with mental illness testified that taking into consideration claimant's history of periodic mental problems, the medical evidence, the testimony at the hearing, and his lack of motivation, there were numerous jobs available in the St. Louis area for a person of his age and educational background. He suggested basic unskilled entry-level positions such as stock worker, materials handler in a warehouse, dock worker, or drill press operator, a job plaintiff enjoyed during his vocational training. When specifically asked about claimant's lack of motivation and periods of depression, the vocational expert qualified his answer, stating that if the depression were chronic and unresponsive to treatment, plaintiff would have to be placed in a low-pressure job, preferably one that he would find stimulating and interesting. The witness ruled out retail or restaurant work as involving too much pressure during peak business hours but again suggested warehouse jobs, perhaps in the music-distribution industry, dock loader, or fork-lift operator, if Dunlap could learn to drive.

■ The medical evidence of record on claimant's condition before 1976 is not conclusive as to whether or not he was disabled for purposes of the Social Security Act before July 19, 1976. A psychological evaluation done in 1962, when he was seven, found signs of a borderline psychotic condition

with poor ability to control impulses, aggression arising from his family relationships, and chronic depressive feelings. He received his first psychiatric treatment ten years later in 1972, at the age of eighteen, when he was hospitalized for two months after a suicide attempt and discharged with a diagnosis of depression. His mother testified that depression over his poor grades precipitated the attempt. In 1975, at the age of 21, he was hospitalized for two weeks for a thyroid malfunction and discharged with a diagnosis of malnutrition and manic-depressive disease. The only other contemporaneous medical report made before his twenty-second birthday is a letter from Dr. Murray E. Finn, his treating physician, to the State Department of Vocational Rehabilitation. The letter is dated December 30, 1976, six months after Dunlap's twenty-second birthday, and states that the doctor last saw the patient on January 16, 1976, and that he was "doing quite well" at that time.

Claimant was evaluated by a psychiatrist in February of 1977 for vocational-rehabilitation training. His diagnosis impression was "no psychiatric illness identified at this time." He found claimant to be well-oriented and able to interpret proverbs and abstract similarities within normal limits. "There was no evidence of pyschosis or organicity or affective disturbance." He felt that claimant was a good candidate for vocational counseling and rehabilitation. He suggested, however, careful observation and further subjective psychological testing. This examination was made within seven months after claimant's twenty-second birthday.

A month later Mr. Dunlap underwent a battery of psychological tests and another examination. In a six-page report, Mr. David P. Grace, psychologist, found him to be an immature, passive, dependent, and anxious person. He thought that the patient would function well only in extremely well-structured situations. His psychodiagnostic impression was severe anxiety neurosis. He concluded that claimant was a suitable candidate for vocational counseling, but that he presently appeared capable of only simple clerical-type work.

In September of 1977 claimant became violent and was taken to the state hospital, where he was found to be in a confused and disoriented state. He remained hospitalized one month and was discharged for outpatient care and drug therapy. The Secretary has apparently conceded that claimant was disabled at this time, because he was awarded supplemental security insurance benefits based on an onset date of November 21, 1977. Several other medical exhibits from late 1977 and the year 1978 were in evidence before the administrative law judge, but we see no need to discuss them here, since there is no disagreement about Mr. Dunlap's disability during that period.

One other very important exhibit remains. On February 1, 1979, Dr. Finn, who has acted as Mr. Dunlap's psychiatrist since 1972, wrote a letter to claimant's attorney, apparently for use in this litigation. He recounts that he first saw claimant in 1972 at age 18 years when he was admitted to Alexian Brothers Hospital for treatment of severe depression. He reports treating him on an outpatient basis five times in 1973 and continuing to see him in 1974. He was again admitted to Alexian Brothers in June of 1975 for two weeks and was seen as an outpatient four times in 1975 and one time in 1976. Dr. Finn did not treat Mr. Dunlap between January of 1976 and August 29, 1978, the crucial period for our determination. Dr. Finn concludes that Mr. Dunlap is totally and permanently disabled as a result of a chronic mental disorder. He sets the onset of the disability as at least as early as age 18.

There is no question that claimant suffers from a chronic mental condition of a reoccurring nature, and that he does not have available the full array of employment opportunities which would be open to a young person of his age and educational background absent his mental condition. The District Court noted that the administrative law judge based his decision in part on a credibility determination. There were conflicts in the testimony of claimant and his

mother. The claimant admittedly lacks motivation to seek employment and has received little or no encouragement from his parents to get out of the house and go to work. Both the claimant's and his mother's testimony raised a genuine credibility issue for the administrative law judge. Their descriptions of his ability to participate in leisure-time activities, his prudent management of his money, and his interests in record and coin collecting support the conclusion that he was not under a disability at the relevant time.

As to the medical evidence, there is a conflict between Dr. Finn's 1979 letter stating that claimant has been disabled since 1972, and his 1976 letter stating that Mr. Dunlap was doing well and that he had not seen him for a year. This is not a case like *Hancock v. Secretary of HEW*, 603 F.2d 739 (8th Cir. 1979), in which the only evidence to support the administrative law judge's decision was reports of consulting physicians. When there is a conflict in evidence, the resolution of that conflict is usually the duty of the trier of fact, in social-security cases as in others. During the calendar year 1976, in which he turned 22, claimant saw his psychiatrist only once, having seen him only five times the previous year. It is reasonable to conclude that during 1976 claimant's condition was under control and was not severe enough to require treatment of any kind. It is not clear from Dr. Finn's letters whether claimant was taking medication during 1976. Other medical reports, discussed above, from 1976 and early 1977 bear out the administrative law judge's conclusion that the severe and disabling illness did not occur until over a year after claimant's twenty-second birthday. After a thorough examination of the hearing transcript and the exhibits, we conclude that there is substantial evidence to support the Secretary's decision.

The judgment is affirmed.