Ophelia C. NORRIS, Plaintiff,

v.

Richard S. SCHWEIKER, Jr., Secretary of Health and Human Services, Defendant.

Civ. No. 81–1148.

United States District Court,
W.D. Arkansas,
El Dorado Division.

Dec. 17, 1982.

Denver L. Thornton, El Dorado, Ark., for plaintiff.

Larry R. McCord, U.S. Atty., Fort Smith, Ark., for defendant.

## MEMORANDUM OPINION

OREN HARRIS, Senior District Judge.

In September, 1980, plaintiff Ophelia Norris applied for supplemental security income and social security insurance benefits. Ms. Norris alleged she had been disabled since May 22, 1980 by hip and shoulder problems. Her claims were denied by administrative personnel initially and on reconsideration, and then again after a hearing before an administrative law judge (ALJ). The ALJ's hearing decision became the final decision of defendant Secretary of Health and Human Services. Plaintiff sought review in this Court under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Because the administrative findings are not supported by substantial evidence on the record as a whole, and because all relevant evidence of record indicates Ms. Norris was disabled, we reverse.

The record reveals something of Ms. Norris's personal and vocational history. At the time of the April, 1981 administrative hearing, plaintiff was fifty-five years old, and had received a high school equivalency degree. Except for one two-year period, Ms. Norris had worked steadily from 1957 through April, 1980. Her most recent jobs included nine years as a "press-operator-finisher" at an automotive parts manufacturing plant, and five years as a gasoline station operator. At the manufacturing plant, Ms. Norris found it necessary to lift thirty-pound boxes, climb ladders, stand eight hours, bend and reach constantly, and squat frequently. As a gas station operator, she pumped gas, checked oil levels and tire pressure, washed windshields, cleaned the station, and lifted fifty-pound oil cases. She was on her feet six hours a day at the station.

Relevant medical evidence consisted primarily of progress notes prepared by plaintiff's treating physician, orthopedic surgeon James Callaway. Ms. Norris first consulted Dr. Callaway in March, 1978; she reported pain and weakness in her left hip. The pain occurred at night and when walking. Dr. Callaway noted pain on adduction, abduction, and rotation. X-rays revealed some increased density of the left femoral head, irregularity of the articular surface, narrowing of the joint line, and a small osteophyte. Dr. Callaway diagnosed "early degenerative changes with possible mild aseptic neucros [sic];" he prescribed medication. Later examinations in September, 1978, September, 1979, November, 1979, and April, 1980, showed worsening of the situation. Increased pain was reported in the left hip and back, and tenderness was found over the left "S.I. joint," left posterior tibial nerve, and right posterior tibial and peroneal nerves.

After attempting to treat the hip problems with medication, Dr. Callaway determined in April, 1980 that surgery for total left hip replacement was needed. The operation was performed on May 22, 1980. Brief notes based on examinations in June, 1980, August, 1980, September, 1980, December, 1980, and March, 1981, document Ms. Norris's post-operative progress. Dr. Callaway made the following observations in those notes:

Ap and lateral of the left hip revealed good position and alignment of the total hip replacement. Should be allowed activities as tolerated.

....

Leg lengths are approximately equal. Flexion is to ninety degrees.

....

Patient complains of pain and limited motion, right shoulder. Duration: One month. Pain on abduction of the right shoulder to about eighty degrees .... Diagnosis: Capsulitis, right shoulder.

....

Seventy-five percent abduction [of left hip]. Normal adduction .... Walks with a slight limp.

....

External rotation [of left hip] is fifty percent of normal as well as internal rotation. Tenderness is in the thigh about mid-thigh.

In June, 1981, Dr. Callaway wrote plaintiff's attorney a brief letter summarizing his conclusions regarding Ms. Norris's prognosis:

She has done fairly well since her surgery. At this present time her symptoms are improved compared to her pre-operative status, but still has some slight pain and tenderness in the thigh and pain on rotation of the hip. Whether or not she would be able to return to full time industrial employment is questionable. Very few people with this severe difficulty do return to industrial type jobs. Whether she will or not remains to be seen.

Be that as it may, she has been and continues to be disabled since 4/22/80.

The testimony of Ms. Norris supplemented the sketchy record. Mr. Norris testified that she used her cane whenever she walked, and that walking even with the cane was painful. She explained that she was at times unable to raise her leg to climb stairs; that she could not lift her foot while sitting down; that she could not bend, squat, or carry anything heavy; and that she could not walk, stand, sit, or lie down for any great length of time. She said she had trouble sleeping and could not put on shoes or slacks or get out of the tub unassisted. Ms. Norris also reported that she experienced constant pain in her left hip, and occasional pain in her shoulder, back, ankles, and right hip. Additionally, plaintiff testified that she had difficulty raising her arm, that she did very little housework and had no significant daily activities, and that each month since the surgery Dr. Callaway had submitted signed statements to her employer indicating that she was unable to work.

The ALJ found that Ms. Norris had no "severe" physical impairments. (Under the Secretary's regulations, an impairment is "severe" if it "significantly limits ... physical or mental abilities to do basic work activities .... [E.g.,] walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.-1521 (1981).) In the ALJ's opinion, the medical evidence showed Ms. Norris was capable of performing "a full range of medium work," including her former work as a press operator or service station operator. The ALJ wrote:

Claimant's testimony as to the severe pain still in the left hip and being unable to walk without the cane is found not credible. Also, testimony that she cannot put on shoes, pants or hose; cannot bend over to shampoo hair; cannot stoop or bend; and cannot lift a six-pack of Coke is not credible because these allegations are not supported by medical history, findings, or medication record.

In making his findings as to the severity of plaintiff's impairments, the ALJ relied on selected statements from Dr. Callaway's progress notes, while rejecting Dr. Callaway's opinion that plaintiff was disabled. We think that the few sentences cited by the ALJ were taken out of context. Since Dr. Callaway had been plaintiff's treating physician for three years and had performed the surgery on plaintiff's hip, his notes were of course of great probative value. However, the notes were brief entries in an ongoing record and were not written for analysis under the Social Security Act. Therefore, the notes should have been evaluated according to their impact as a whole and according to the interpretation given them by Dr. Callaway. At the same

time the entries were written, Dr. Callaway was certifying monthly to plaintiff's employer that plaintiff was unable to work. We think that the progress notes, like all other evidence of record, tended to show that Ms. Norris's ability to stand, walk, and sit was significantly diminished. We believe that a fair reading of the notes permits no other conclusion. Accordingly, we reject the ALJ's finding that Ms. Norris was not severely impaired, because there is no evidence in the record to support it.

■ The ALJ's findings regarding Ms. Norris's capacity for medium work (findings which estimated the precise number of pounds plaintiff could lift and the exact number of hours a day she could stand, squat, or walk) were taken verbatim from the two earlier administrative denial decisions prepared by nonexamining physicians. The Court of Appeals has repeatedly held that opinions of nonexamining physicians are entitled to little weight, particularly when such opinions are contradicted by evidence submitted by a treating physician. See, e.g., *Brand v. Secretary of HEW,* 623 F.2d 523, 527 n. 6 (8th Cir.1980); *Landess v. Weinberger,* 490 F.2d 1187 (8th Cir.1974). Furthermore, the only evidence of record concerning plaintiff's capacity for lifting, standing and squatting was contained in the testimony of plaintiff herself; this testimony was given after the advisors wrote their decisions and was completely inconsistent with their "findings." Because the advisors' opinions appear to have been unsupported guesses, we hold that the ALJ erred in incorporating them into his findings.

■ Finally, we must reject the ALJ's credibility findings. We recognize that we are to show great deference to the conclusions of administrative fact-finders who are responsible for evaluating the demeanor of witnesses and resolving conflicts in the evidence. *Wilson v. Schweiker,* 681 F.2d 526 (8th Cir.1982); *Andrews v. Schweiker,* 680 F.2d 559, 561 (8th Cir.1982); *Dunlap v. Harris,* 649 F.2d 637, 640–41 (8th Cir.1981); *Brand, supra,* 623 F.2d at 527. However, it appears that the ALJ refused to credit

plaintiff's testimony for the sole reason that it was not corroborated in each detail by medical reports. We note that Dr. Callaway's evidence provides general medical corroboration for the testimony. More importantly, the ALJ's insistence on medical corroboration was erroneous. Although the Social Security Act does require a claimant to prove a "medically determinable impairment," see 42 U.S.C. § 423(d)(1), (d)(3), it does not require a claimant to produce medical evidence establishing the extent of all subjective symptoms. *Cole v. Harris,* 641 F.2d 613, 615 (8th Cir.1981); *Ragsdale v. Secretary of HEW,* 623 F.2d 528, 530 (8th Cir.1980). Testimony regarding such symptoms must be seriously considered by ALJs. *Brand, supra.*

■ Since the ALJ's decision was not supported by substantial evidence, we must decide whether further administrative consideration is required, or whether "a rehearing would simply delay receipt of benefits." *Tennant v. Schweiker,* 682 F.2d 707 (8th Cir.1982). Clearly, if Ms. Norris's testimony regarding her limitations was correct, she was unable to perform any substantial gainful activity. The medical evidence supplied by Dr. Callaway is consistent with the testimony and corroborates it in some respects; there is no evidence of record inconsistent with the testimony. Given Ms. Norris's long work history and her treating physician's evaluation of her impairment, we see no reason to disbelieve her testimony. *Accord, Hancock v. Secretary of HEW,* 603 F.2d 739 (8th Cir.1979). Our conclusion is buttressed by the following regulation promulgated by the Secretary, providing that disability will be found on the basis of medical evidence alone if such evidence establishes:

> 1.03 Arthritis of a major weight bearing joint ... with limitation of motion and enlargement or effusion in the affected joint, as well as a history of joint pain and stiffness. With:
>
> ....
>
> C. Reconstructive surgery ... of a major weight bearing joint and return to full weight-bearing status did not occur ... within 12 months of onset.

20 C.F.R. Appendix 1 Pt. A to Subpart P of Part 404 (1981). We believe the evidence of record plainly satisfies the requirements of the regulation.

Having carefully reviewed the record, we reverse the decision of the Secretary and remand the case for calculation of benefits. As in the *Hancock* case, *supra,* the Secretary is "free to review [Ms. Norris's] condition in light of any change since the time of the hearing before the ALJ and to continue to periodically reexamine [her]." 603 F.2d at 741.