Ronald L. BERRY

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services.**

**No. B–C–90–61.**

United States District Court, E.D. Arkansas, N.D.

April 12, 1991.

Frederick S. Spencer, Mountain Home, Ark., for plaintiff.

Jana Brown, Asst. U.S. Atty., Little Rock, Ark., for defendant.

## ORDER

ROY, District Judge.

Plaintiff brought this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for review of a final decision of the Secretary of Health and Human Services denying his deceased wife's claim for a period of disability and for disability insurance benefits under sections 216(i) and 223 of Title II of the Act, 42 U.S.C. sections 416(i) and 423.

Plaintiff's wife (claimant) filed her current application for disability insurance benefits on December 17, 1985, alleging disability since June 30, 1979, due to cancer of the larynx. The State Agency and the Social Security Administration denied claimant's application initially and on reconsideration. Claimant died on June 1, 1986. Plaintiff requested a hearing de novo before an administrative law judge (ALJ). However, such request was denied on June 22, 1988, based on the doctrine of *res judicata*.

Plaintiff requested review of this decision and by order dated December 7, 1988, the Appeals Council remanded the case for further administrative proceedings, finding that *res judicata* was not applicable to this case because of revisions to the "nonsevere" regulations. An administrative hearing was held on July 26, 1989, at which plaintiff and his attorney appeared. The ALJ issued a decision on October 18, 1989, that claimant was not disabled within the meaning of the Social Security Act prior to the expiration of her insured status. The Appeals Council denied plaintiff's request for review of the hearing decision on May 25, 1990. The decision of the ALJ therefore became the final decision of the Secretary.

At the time the claimant filed her application in 1985, she was thirty-four years old. She had a twelfth-grade education, and past relevant work experience as a shoe factory employee. After the claimant died on June 1, 1986, her husband, Ronald Berry, was substituted in as the party of record. There is no dispute that the claimant met the disability insured status requirements of Title II of the Act on October 16, 1978, and continued to meet them through June 30, 1979.

In 1973, plaintiff began experiencing neck pain and underwent five weeks of chiropractic treatment, which provided relief of her pain. In 1974, she began experiencing neck pain again, associated with shortness of breath, chest pain and left arm pain. She entered Baptist Memorial Hospital in June 1974, where she was diagnosed as having degenerative cervical disc disease. She responded well to physical therapy and was discharged home on June 8, 1974, when she was released. In July of

1974, she was authorized to return to work as of 8–5–74 as tolerated.

On June 8, 1978, claimant entered Saint Bernard's Regional Medical Center (St. Bernard's) complaining of hoarseness for several years which had increased in severity the previous three weeks. The examination revealed some vocal nodules and the claimant was advised to rest her voice. She returned to St. Bernard's in early October 1978, complaining that her voice was worse, but denying any soreness. Examination revealed some congestion of the vocal cords with claimant primarily using her false vocal cords fully. She was admitted to St. Bernard's for a suspension microlaryngoscopy, which was performed on October 10, 1978. The microlaryngoscopy revealed a lesion involving the anterior two-thirds of the right vocal cord, and the left middle third of the vocal cord. The areas were stripped, and the pathological diagnosis was severe epithelial dysplasia of the left vocal cord with moderately well-differentiated superficially invasive squamous cell carcinoma of the right vocal cord. It was recommended to the claimant that she return to the hospital in six weeks for repeat suspension microlaryngoscopy and vocal cord stripping to see if there is any residual carcinoma present. The claimant was discharged on voice rest.

Claimant returned to St. Bernard's for repeat suspension microlaryngoscopy and stripping of the vocal cords on November 30, 1978. The pathological report indicated moderate to severe dysplasia of both vocal cords with no evidence of invasive carcinoma.

On January 30, 1979, claimant was admitted to the University of Arkansas for Medical Sciences due to continuing hoarseness and loss of voice. She underwent a suspension laryngoscopy, performed by Dr. James Y. Suen. Claimant had telangiectasia of much of the supraglottic larynx, and on the anterior true vocal cords she had a small lesion which looked slightly infiltrated. The mucosa on both cords were thickened, and were reddened in the right ventricle. A $CO_2$ laser was used to remove all of the epithelium on both true vocal cords.

Dr. Suen stated that claimant would need close follow up to detect any significant abnormal changes in the future. When claimant returned to see Dr. Suen on February 14, 1979, he reported that she was doing a little better. Although there was no evidence of malignancy, her vocal cords were reddened. He recommended voice rest. On March 14, 1979, when claimant next saw Dr. Suen, claimant reported that her voice was better. On June 5, 1979, claimant returned to see Dr. Suen and underwent a fourth suspension laryngoscopy. The anterior part of her right true cord and the anterior commissure were very immobile and had a granular lesion overlying this. Dr. Suen initially thought this was invasive carcinoma. Several adequate biopsies and the pathologists said that there was no evidence of any tumor. There was mild atypia. Dr. Suen used a laser to remove the abnormal areas on the right true cord and and anterior commissure. Dr. Suen concluded that apparently there was no obvious carcinoma at that time. Dr. Suen concluded that he was not sure what will happen to claimant's vocal cords, but that she has a good chance of having the recurrent carcinoma. He felt that he should continue a close follow up on her, and would recommend to her that she return in 6 months again for another suspension laryngoscopy and possible laser treatment.

A report dated March 13, 1984 from University Hospital states that claimant had done well after the stripping of her vocal cords until the last several months, when she was beginning to have airway problems. On March 8, 1984, a direct laryngoscopy and tracheotomy were performed and a biopsy revealed squamous cell carcinoma. On March 13, 1984, claimant underwent a total laryngectomy and right radical neck dissection and left modified neck.

On March 1986, claimant was bedridden due to cancer. Dr. Douglas A. Stevens, a clinical psychologist, conducted a psychological evaluation of claimant and found that she was severely depressed, and concluded that her history suggested she had been disabled since August 1978.

Plaintiff, Ronald Berry, testified that his wife died on June 1, 1986 from cancer. He also testified that during the period of time prior to June 30, 1979, she was experiencing recurring hoarseness, and that after her vocal cords were stripped, she was told not to talk. He stated that she could not be around any cigarette smoke, fumes, or odors, or it would choke her. He stated that in 1978 she was experiencing pain—when she tried to speak it would be like someone with a migraine headache. She would have this pain any time she'd try to do anything where she attempted to speak or where there were any kind of fumes. She couldn't stand any kind of odor in the house. The pain would be so unbearable she would have to lie down. Mr. Berry further testified that when she went to Little Rock University Hospital and they did the laser stripping in her throat, the real depression started. He stated that the doctor told her absolutely not to try to talk or be around any kind of fumes. He stated that there was no place claimant could go since there is cigarette smoke everywhere. In a typical day in 1978 and 1979, Mr. Berry stated that the claimant would sit in the house by a machine that kept the air as clean as possible and crocheted. She cried alot and was depressed because she determined that she was going to die. Mr. Berry stated that prior to June 30, 1979, he did all of the housework, the yard work and the cooking and cleaning.

The ALJ found that the claimant's impairments were severe but that none of the impairments or combination of impairments meets or equals the level of severity contemplated in any of the listed impairments in Appendix 1 to Subpart P. He concluded that the claimant suffered from two conditions: degenerative cervical disc disease and early cancer of the vocal cords, but that the evidence did not show that the claimant was disabled prior to June 30, 1979. He found that the medical evidence did not show that the claimant had disabling pain. In arriving at this conclusion, the ALJ recognized the claimant's difficulty with speaking and hoarseness, and the claimant's husband's testimony that the claimant was suffering from severe disabling pain. However, the ALJ concluded the testimony not to be credible prior to June 30, 1979 in light of the daily activities reported by the claimant in the disability reports dated September 13, 1979 and April 24, 1981, wherein the claimant reported she cooked, went shopping, swam, crocheted, sewed some, visited, and drove.

The ALJ concluded that the claimant's previous work in a shoe factory required an exertion level greater than light, but that she could perform light work.

The role of the Court under 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the decision of the Secretary, and not to reweigh the evidence or try the issues de novo. *Sykes v. Bowen,* 854 F.2d 284, 285 (8th Cir.1988). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 401, 91 S.Ct. at 1427.

■ Although subjective complaints may be discounted if there are inconsistencies in the record, this determination must be based upon the record as a whole. It cannot rest solely upon one element of the evidence such as objective medical findings or the observations of the ALJ. *Conley v. Bowen,* 781 F.2d 143, 146 (8th Cir.1986). Furthermore, the Secretary's credibility findings must be affirmed if they are supported by substantial evidence on the record as a whole. *Powell v. Heckler,* 741 F.2d 221 (8th Cir.1984). When subjective symptoms are not found to be credible, however, the Secretary's decision must be sufficiently explicit on the issue to allow meaningful review. *Andrews v. Schweiker,* 680 F.2d 559, 561 (8th Cir.1982); *McGhee v. Harris,* 683 F.2d 256, 259 (8th Cir.1982).

The Social Security Act does not require a claimant to produce medical evidence establishing the extent of all subjective symp-

toms. *Norris v. Schweiker*, 553 F.Supp. 783, 786 (W.D.Ark.1982); *Cole v. Harris*, 641 F.2d 613, 615 (8th Cir.1981). It does, however, require a claimant to prove a "medical impairment that results from anatomical, physiological, or psychological abnormalities which could *reasonably be expected to produce the pain* or other symptoms alleged (emphasis in original)". *Herbert v. Heckler*, 783 F.2d 128, 130 (8th Cir.1986) (quoting 42 U.S.C. § 423(d)(5)) (emphasis in original).

The Eighth Circuit has held that, in determining eligibility for disability benefits, both objective and subjective evidence must be considered, including "medical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status ... because it may bear upon the severity of the claimant's conditions before the expiration of his or her insured status." *Martonik v. Heckler*, 773 F.2d 236, 240 (8th Cir.1985) (quoting *Basinger v. Heckler*, 725 F.2d 1166, 1169–70 (8th Cir.1984).

Evidence demonstrating that a claimant pursues limited daily activities such as taking short walks, watching television, and driving a car is not substantial evidence that she is capable of the ability to perform substantial gainful activity. *See Nettles v. Schweiker*, 714 F.2d 833, 837 (8th Cir.1983); *Simonson v. Schweiker*, 699 F.2d 426, 429 (8th Cir.1983). The fact that the plaintiff is capable of engaging in household chores is not necessarily inconsistent with severe pain. *McDonald v. Schweiker*, 698 F.2d 361, 363 (8th Cir.1983).

The Court has reviewed the record as a whole, and cannot say that there is substantial evidence to support the Secretary's findings. It is obvious from the record that the claimant suffered from the same impairment in 1978 and 1979 as that which ultimately took her life in 1986. It is further obvious from the record that the claimant was severely hampered in 1978 and 1979 from engaging in any substantial gainful employment. She was not able to speak for periods of time. In fact, the record indicates that after her vocal cords were stripped, she was to rest her voice. Furthermore, it is reasonable to assume

that the claimant suffered considerable pain as a result of the vocal cord strippings. Finally, the ALJ found that the plaintiff was unable to return to her former work, but he failed to meet his burden of proving there were other jobs the claimant could perform, taking into consideration her voice limitations, the pain that it is reasonable to assume existed from the vocal cord strippings, and her depression. The ALJ failed to address the Dr. Stevens' statements as well as her husband's testimony relating to claimant's depression. The Court is of the opinion that the record as a whole establishes that the claimant was disabled prior to the expiration of her insured status on June 30, 1979.

Therefore, after carefully reviewing the evidence, the Court must conclude that the record, considered as a whole, lacks substantial evidence to support the Secretary's findings. Because the record appears to be fully developed, the Court will not order that further findings be made, but, instead, concludes that the final decision of the Secretary should be vacated.

THEREFORE, the plaintiff's motion for summary judgment is granted, the final decision of the Secretary is hereby vacated and reversed, and the cause is remanded to the Secretary with directions to award a period of disability and such benefits as the plaintiff is entitled to receive by law for her disability.