Santos **REYES**

v.

**The SECRETARY OF HEALTH, EDUCATION AND WELFARE.**

No. 71–1895.

United States Court of Appeals, District of Columbia Circuit.

Feb. 23, 1973.

---

L. Patrick Gray, III, Asst. Atty. Gen. at the time the brief was filed, Harold H. Titus, Jr., U. S. Atty., Kathryn H. Baldwin and James C. Hair, Jr., Attys., Dept. of Justice, were on the brief for appellant.

Rosalyn B. Bell, Washington, D. C., was on the brief for appellee.

Before Mr. Justice CLARK,* of the Supreme Court of the United States, and MacKINNON and ROBB, Circuit Judges.

MacKINNON, Circuit Judge:

This action was instituted by claimant-appellee Reyes in the District Court pursuant to section 205(g) of the Social Security Act (42 U.S.C. §

---

* Mr. Justice Tom Clark, United States Supreme Court, Retired, sitting by designation pursuant to 28 U.S.C. § 294(a) (1970).

405(g)) for review of the final decision of the Secretary of Health, Education and Welfare denying him certain Social Security benefits. The District Court granted plaintiff's motion for summary judgment and thereby reversed that administrative determination.[1] This appeal by the Secretary followed.

In 1968, claimant applied for child's disability insurance benefits under section 202(d)(1)(B)(ii) of the Social Security Act (42 U.S.C. § 402(d)(1)(B)(ii))[2] which provides for an award of benefits to an individual who is the son of and dependent upon an old-age beneficiary, if such individual is under a disability which began before he attained the age of eighteen. Claimant's application was denied by the Social Security Administration initially on April 14, 1969 (Tr. 38–39) and again on reconsideration on July 25, 1969 (Tr. 47–48). Claimant then requested review by a Hearing Examiner (Tr. 16–17).[3] The Hearing Examiner found that the medical evidence indicated, without clinical findings, that claimant had received some treatment for pulmonary tuberculosis in 1933 or 1934 (when he was 11 or 12), but that the disease apparently had been inactive or nonexistent thereafter until 1964 when it was detected and treated (Tr. 13–14). Accordingly the Hearing Examiner found that claimant's impairment was not of such severity before age 18 as to prevent him from engaging in substantial gainful work and denied his application (Tr. 14–15). Claimant then sought review of the Hearing Examiner's deci-

---

1. The District Court made no findings of fact and conclusions of law, reversing the Secretary in a brief order. While this is legally sound under Fed.R.Civ.P. 52, since it was issued pursuant to a Rule 56 motion for summary judgment, it renders review particularly difficult in cases like this. We have remarked that where the trial court reverses an agency decision, apparently relying "on a lack of substantial evidence, it should at least state which findings are unsupported." Einbinder v. Novinger, Inc., 115 U.S.App.D.C. 395 at n. 3, 320 F.2d 714 at n. 3 (1963). See also, Gardner v. Bishop, 362 F.2d 917 (10th Cir. 1966); Banks v. Celebrezze, 341 F.2d 801 (6th Cir. 1965). In Celebrezze v. Zimmerman, 339 F.2d 496 (5th Cir. 1964), involving an appeal under the Social Security Act in which the District Court similarly reversed the Secretary of H.E.W. on a summary judgment motion, the court stated:

> [I]n the rare case in which it is appropriate for the trial court to reverse the Secretary's findings because there is no substantial evidence to support them it would make it much easier for this Court, on appeal, to have the benefit of the trial court's analysis of the evidence, and the reasoning by which it arrives at its determination that it is unable to find support in the record for the Secretary's findings.

339 F.2d at 498. However, since we are as fully capable as the trial court to review the record at hand, there is no need for a remand for this purpose.

2. Section 202(d) provides:

> (d)(1) Every child . . . of an individual entitled to old-age . . . insurance benefits . . . if such child—
> (A) has filed application for child's insurance benefits,
> (B) at the time such application was filed was unmarried and . . . (ii) is under a disability (as defined in section 423(d) of this title) which began before he attained the age of 18, and
> (C) was dependent upon such individual—
> (i) if such individual is living, at the time such application was filed,
> *　　*　　*　　*　　*
> shall be entitled to a child's insurance benefit for each month, beginning with the first month after August 1950 in which such child becomes so entitled to such insurance benefits and ending with the month preceding . . .
> *　　*　　*　　*　　*
> (G) if such child was under a disability (as so defined) at the time he attained the age of 18, the third month following the month in which he ceases to be under such disability . . . .

42 U.S.C. § 402(d)(1)(B)(ii).

3. In the reconsideration determination, claimant was informed that in lieu of a hearing, to which he was entitled only if he came to the United States at his own expense, he could request review of his claim by a Hearing Examiner and was advised to submit any additional evidence he might have with this request (Tr. 48) See note 7, infra.

sion by the Appeals Council (Tr. 9–11) and, upon reconsideration of the entire record, the Appeals Council affirmed the Hearing Examiner's decision and this became the final decision of the Secretary on December 30, 1969 (Tr. 8). This action in the United States District Court for the District of Columbia ensued and resulted in a reversal of this administrative decision from which the Secretary now appeals.

Claimant, a resident of the Philippines, was born October 25, 1922 and is the unmarried son of a Social Security old-age beneficiary. As such he is eligible for the benefits in question if he "is under a disability (as defined in section [42 U.S.C. § 423(d)]) which began before he attained the age of 18." In support of his application, claimant stated that as a child he tired easily, was confined mostly to bed and had to force himself to go out and play with other children (Tr. 46). He also related that he was compelled to quit school after the fourth grade because of his ailment and that he has never worked except to perform a few simple farm chores (Tr. 46). The medical evidence submitted by claimant consists of the reports of two physicians and a radiologist. One physician's two-sentence report made in 1968 noted that claimant presently complained of certain tubercular symptoms and that he remembered treating him for pulmonary tuberculosis in 1933 (Tr. 57–58). Another doctor reported in 1968 that he had treated claimant with anti-tuberculosis drugs since about 1964. Also, a radiologist interpreted a 1968 chest x-ray as "minimal" tuberculosis (Koch's pulmonary) and a physician's review of that x-ray resulted in the conclusion that it showed "minimal to moderate fibro-nodular tuberculosis" (Tr. 62–63). This physician also supplied a supplementary report indicating that the claimant had not been hospitalized under his care (Tr. 59–60) and the claimant himself makes no assertion that he received any kind of treatment during the twenty-six years between 1938 and 1964 (Tr. 56).

For purposes of section 202(d), under which appellee asserts his claims, the term "disability" is exhaustively defined in section 223(d) of the Act:

(d) Same; disability.

(1) The term "disability" means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;
\* \* \*

(2) For purposes of paragraph (1)(A)—

(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

\* \* \* \* \* \*

(3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

\* \* \* \* \* \*

(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.

42 U.S.C. § 423(d). Further standards to aid in determining "disability" are provided by Social Security regulations. 20 C.F.R. § 404.1501 et seq. (Subpart P).

■■■ The Hearing Examiner's determination that appellee had failed to demonstrate the existence of a disability within the meaning of § 223(d) prior to age 18, was certainly supported by substantial evidence and should have been sustained. In these matters deference is to be afforded the administrative decision and it is not for the trial court to review de novo the Secretary's final decisions as to findings of fact and the reasonable inferences to be drawn therefrom.[4]

■■■ Here there is no clinical, diagnostic evidence as to the claimant's disease prior to age 18, but only the recollection, 35 years removed, of his current doctor. There is absolutely no objective evidence of claimant's disability in the thirty years between 1934 and 1964. The only clinical, diagnostic medical evidence we have shows a minimal to moderate tuberculosis existing about 1964. Even at this time claimant was not hospitalized and his response to drug therapy was recorded as "quite favorable" (Tr. 50). Under these circumstances it cannot be said that the Secretary's denial of benefits due to a failure of appellee to bear his evidentiary burden was arbitrary or capricious. Even assuming, *arguendo*, that appellee can be said to be presently totally disabled within the meaning of § 223(d), there is no showing that this is the same condition that began in 1933 *and* which at that time and at all times subsequent thereto was equally disabling to such a degree that appellee was prevented from engaging in substantial gainful work.[5] The Hearing Examiner clearly had substantial evidence in the record before him upon which he could conclude that the condi-

4. Mitchell v. Gardner, 123 U.S.App.D.C. 195, 358 F.2d 826 (1966); Lessin v. Celebrezze, 114 U.S.App.D.C. 278, 314 F.2d 283 (1963). *See also*, Beane v. Richardson, 457 F.2d 758 (9th Cir. 1972); Flack v. Cohen, 413 F.2d 278 (4th Cir. 1969); Easttam v. Secretary of HEW, 364 F.2d 509 (8th Cir. 1966); Maloney v. Celebrezze, 337 F.2d 231 (3d Cir. 1964); Adams v. Flemming, 276 F.2d 901 (2d Cir. 1960).

5. Appellee has argued that section 202(d)(1)(B)(ii) does not require that a claimant for child's benefits be disabled before he attains age 18, but requires only that a claimant's present disability as defined in § 223(d) be the result of an impairment that began before he reached age 18. However, the legislative history of that section clearly precludes such an approach, indicating explicitly that the intent of Congress was to provide benefits for children who were permanently disabled prior to age 18 and have remained so continuously to the present time. The Senate Finance Committee Report stated:

The bill includes provision for payment of disabled child's benefits to the dependent disabled child of a deceased or retired insured worker *if the child is permanently and totally disabled and has been so disabled since before he reached age 18. * * * Your committee's bill would provide benefits for a child who has been totally and permanently disabled before attaining age 18,* if the child is totally and permanently disabled *and dependent upon the parent at the time the parent dies or becomes entitled to retirement benefits.* To be considered disabled the child would have to be unable to engage in any substantial gainful activity by reason of a severe mental or physical impairment that is expected to continue indefinitely.

S.Rep.No.2133, 84th Cong., 2d Sess. 2, 5–6 (1956), U.S.Code Cong. & Admin. News 1956, p. 3877 (emphasis added). The House Report states that the bill provides for "continuation of monthly benefits to children who *become totally and permanently disabled before age 18.*" H.R.Rep.No.1189, 84th Cong., 2d Sess. 2 (1955) (emphasis added). *See also, id.* at 8, 24–25.

tion either did not exist or was wholly inactive [6] until 1964 (Tr. 14).

■■■ Claimant also contends that he was denied due process of law in that he was not afforded a hearing in the Philippines.[7] We find this argument without merit. Even if a nonresident alien were entitled to the protections of the due process clause in a case like this,[8] it is exceedingly clear that the Secretary's regulation requiring that all proceedings in the administration of the Act which cannot be conducted by mail, including hearings, must be conducted only within the boundaries of the United States,[9] is clearly reasonable.[10] It is neither an arbitrary requirement nor is it unduly discriminatory.

We therefore find the Secretary's final decision to have been correct and supported by substantial evidence and accordingly the District Court erred in setting it aside.

Reversed.

6. The Hearing Examiner was entitled to rely on the Social Security regulations in this regard. For purposes of § 202(d) child's disability insurance, 20 C.F.R. § 404.1506 adopts a list of impairments (Subpart P, App.) as an appendix in order to aid in reaching a determination of "disability" vel non. See 20 C.F.R. 404.1501. These regulations provide:

> B. Pulmonary tuberculosis is a communicable disease and disability is determined primarily on the basis of activity of the disease. Individuals with "inactive" or "quiescent" disease are not considered to be under a disability on the basis of tuberculosis, whereas individuals with "active" tuberculosis are considered to be under a disability.

20 C.F.R. Subpart P, App. 3.00(B). From the long period in which there was no medical record of treatment or hospitalization, the Hearing Examiner could correctly conclude that the claimant's condition had entered an inactive or quiescent stage and as such he was not under a permanent disability sufficient to preclude him from engaging in substantial gainful work.

7. By long-standing practice, the Secretary has afforded claimants, whether United States citizens or foreign nationals, a

hearing only within the United States. This was recently embodied in the regulation, see note 9, infra.

8. Traditionally the courts have held that the United States Constitution only operates within our territorial boundaries. Johnson v. Eisentrager, 339 U.S. 763, 70 S.Ct. 936, 94 L.Ed. 1255 (1950); Ross v. McIntyre, 140 U.S. 453, 464, 11 S.Ct. 897, 35 L.Ed. 581 (1891). The equal protection clause, for example, has been held explicitly to apply only to aliens within the jurisdiction of the United States. Wong Wing v. United States, 163 U.S. 228, 16 S.Ct. 977, 41 L.Ed. 140 (1896); Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

9. 20 C.F.R. §§ 404.923, 404.934 (1971).

10. There appears to be no legislative intent to the effect that the Social Security Act was to be administered outside the United States, and absent such a showing, it is familiar law that "the legislation of Congress will not extend beyond the boundaries of the United States unless a contrary legislative intent appears." Steele v. Bulova Watch Co., 344 U.S. 280, 285, 73 S.Ct. 252, 255, 97 L.Ed. 252 (1952).