Joseph C. GOODWIN, Petitioner,

v.

**RAILROAD RETIREMENT BOARD, Respondent.**

No. 76–1504.

United States Court of Appeals, Fifth Circuit.

Feb. 10, 1977.

Jeffrey J. Skarda, Houston, Tex., for petitioner.

Dale G. Zimmerman, Gen. Counsel, David B. Schreiber, Assoc. Gen. Counsel, Edward S. Hintzke, Asst. Gen. Counsel, James E. Lanter, Gen. Atty., Railroad Retirement Bd., Chicago, Ill., for respondent.

Before BROWN, Chief Judge, GODBOLD, Circuit Judge, and MEHRTENS, District Judge.*

MEHRTENS, District Judge:

Petitioner appeals from a decision of the Railroad Retirement Board (RRB) denying him a disabled child's insurance annuity under section 5(c) of the Railroad Retirement Act of 1937 (45 U.S.C. § 228e(c)). We reverse.

In 1973, petitioner Joseph C. Goodwin filed an application with the RRB for a child's insurance annuity, based on his deceased father's service to the railroad. The Board denied his application, and he appealed to this Court as permitted by 45 U.S.C. § 228k.

To qualify for these benefits "a 'child' shall have been dependent upon its parent employee at the time of his death . . . and . . . shall, without regard to his age, be unable to engage in any regular employment by reason of a permanent physical or mental condition which disability began before he attained age twenty-two . . . ." (45 U.S.C. § 228e(*l*)(1)(ii)(C)).

Petitioner has three different problems upon which he has based his claim for benefits: epilepsy, heart condition and mental deficiency. He claims he has had substantial medical treatment for these conditions but many of the records of the childhood treatments are unavailable or illegible.

Thirty-four years old at the time of his application, petitioner dropped out of school in rural Louisiana in the fifth grade at the age of 15. In 1957, when he was 16 years old, he spent six months in a mental health center. The diagnosis was moderate mental deficiency, with a neurotic reaction. The center described the impairment as severe and treated him with medication and electro-shock therapy. Upon his discharge, the center stated his impairment was moderate and they could do no more for him. In 1972 his IQ was found to be 56, which is described as mentally defective.

Prior to reaching age 22, petitioner had received treatment for epilepsy from five clinics or hospitals. The medical records of two of those sources positively diagnose epilepsy.

The medical records from Lafayette Charity Hospital concern the period of petitioner's life prior to his 22nd birthday. They are largely illegible, however, probably due to the lack of sophisticated copying equipment. While there is no mention of epilepsy, he was found to have a heart murmur.

Records from St. Landry Hospital in Louisiana show treatment for epilepsy, nervous spells, emotional stress and tachycardia (rapid beats of the heart). He responded well to medication. Other records do not give enough details to determine the type, frequency, severity and duration of seizures or whether the epilepsy was successfully controlled by treatment.

From 1963 to 1969, when he was employed as a dishwasher and general helper in a hospital, he was treated for epilepsy, according to lay testimony provided by the petitioner, his aunt, and other hospital workers who heard of his seizures. A nurse

---

* Senior District Judge for the Southern District of Florida, sitting by designation.

substantiated the occurrence of blackouts during his employment.

From 1969 to date, the medical evidence shifts diagnosis from epilepsy to convulsive disorder. Some records show an ambiguity of diagnosis between convulsive disorder and anxiety reaction. Nevertheless, all generally agree that the seizures exist, that they cause the petitioner to lose consciousness and that they at least contribute to his disability.

In relation to his heart problems, petitioner had a cardiac catheterization in 1959. On October 28, 1975, a clinic was testing his heart condition by using a treadmill and he reacted by having a seizure during the test. Petitioner argues that this supports his position that whether the condition be classic epilepsy or some mental disorder, he cannot deal with the pressures of competitive employment.

The Board interpreted sections 5(c) and 5(*l*)(1)(ii)(C) of the Railroad Retirement Act of 1937 as requiring a continuing disability from before age 22 until the time of application for benefits. It found that Goodwin's disability was not continuing because he secured some employment. Yet, petitioner has been certified for various disability benefits from three other agencies, including the Louisiana Department of Public Welfare, the Harris County (Texas) Welfare Department and the Social Security Administration.

■ The conclusion of this Court is that the petitioner's work at the hospital was not regular employment so as to deny him benefits.

■ The adequacy of one's job performance is a factor to be considered in determining disability. At 20 C.F.R. § 404.-1532(d) it is stated that:

". . . 'Made work,' that is work involving the performance of minimal or trifling duties which make little or no demand on the individual and are of little or no utility to his employer, or to the operation of a business, if self-employed, does not demonstrate ability to engage in substantial gainful activity."

*Ziskin v. Weinberger,* 379 F.Supp. 124, 127 (S.D.Ohio, W.D., 1973)

When he did work at the hospital, petitioner's employment situation was not that of a normal worker. The nun who was president of the hospital noted his ability to function was based on the close-knit situation where several of his cousins were employed in nursing service, as well as having other relatives who worked in both the laundry and housekeeping departments. He also worked under the guidance of his aunt in the dietary department. She utilized her position to schedule his work so as not to put stress on him. Also, several of his uncles and neighbors were employees of the dietary department at the time. These families arranged a car pool so that transportation would not be a problem. The president noted that the Sisters in charge of the dietary department were sympathetic towards him and overlooked many of his shortcomings.

The Board denied petitioner's annuity after finding that his condition was not severe enough to be considered disabling within the meaning of the Act. Supporting its ruling, it made lengthy findings, focusing on the vagueness of some of the witness' testimony, some conflicting evidence as to the frequency and severity of seizures, and the lack of medical records substantiating the lay testimony.

■ However, the evidence taken as a whole clearly shows the petitioner's lack of fitness for substantial, regular employment. The sheltered environment and special treatment he received at the hospital were not the type of working conditions that can be duplicated outside this family atmosphere. *See, Lowe v. Finch,* 297 F.Supp. 667, 671 (W.D.Va.1969).

The Board's concern about the lack of records does not take into consideration the realities of petitioner's situation. The doctors and nurses at the hospital where he worked reportedly treated him as the need arose, but the formality of keeping a chart on kitchen help was probably not the practice.

The lay testimony of the petitioner's mother and two aunts documents his early seizures. While all have an interest in the establishment of his disability, all three describe a continuous history of observance and treatment of seizures from onset to age 22. In light of the illegibility of the early records, corroborating lay testimony should be given due credence. *McCalip v. Richardson,* 460 F.2d 1124, 1129 (8th Cir. 1972). The Board erred as a matter of law in discounting such testimony.

Supporting our finding that petitioner's disability was a continuing one despite his work experience are several Social Security Act cases—the disability sections of the Social Security Act having been more litigated than the corresponding sections of the Railroad Retirement Act. The validity of the analogy between the two acts regarding their disability standards is well supported. *See, Parker v. Railroad Retirement Board,* 441 F.2d 460, 463 at n.6 (7th Cir. 1971); *Duncan v. Railroad Retirement Board,* 375 F.2d 915 (4th Cir. 1967).

In *Sisia v. Flemming,* 183 F.Supp. 194 (E.D.N.Y.1969), Miss Sisia, like the petitioner in the instant case, left school at age 15, unable to cope with school life. She was then in the fourth grade. From 1952 to 1954 she spent time in a state hospital recovering from a "psychotic episode" and was evaluated to be unable to adjust to a competitive employment situation. Her IQ was found to be about 65. She secured a job packing boxes in a shampoo factory in 1944, but she was frequently absent from work. When she was 41 years old, she applied for a child's benefit from the Social Security Administration and was denied. The Court, in considering her appeal, held that her work record, even if substantial in both income and services to her employer, would not necessarily establish nondisability. The case was returned to the Administration below for additional evidence on potential physical disability.

In *Aaron v. Fleming,* 168 F.Supp. 291, 295 (D.C.M.D.Ala., E.D., 1958), a case concerning disability benefits under the Social Security Act, §§ 205(g), 216(i)(1, 2), Judge

Rives stated, "I do not interpret the Act to apply only to the totally helpless and bedridden nor to those at death's door."

The Railroad Retirement Board relies on *Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973). There, the court held that the evidence supported the conclusion of the Secretary of Health, Education and Welfare that the 42-year-old claimant who had been employed continuously for 19 months after his 18th birthday, earning more than $300 per month, had received a college degree, worked in other jobs after that birthday and had a driver's license, was not disabled continuously since his 18th birthday, and so was not entitled to benefits. The disability of the petitioner in the instant case is much more severe than that of the petitioner in *Futernick.*

■ The Board claimed petitioner Goodwin's disability was not continuous from before age 22 until the time of application for benefits. The petitioner's disability began before age 22 and he is disabled today. It would be carrying the statute to an absurdity to deny him his benefits because of his short periods of temporary improvement.

We note the reasoning in *Ziskin v. Weinberger, supra,* at 128. In that case, the plaintiff was a polio victim who was able to earn a college degree in education and did teach school for a time. However, she got the job through political pressure, had tremendous difficulty in trying to teach, and was eased out of the school system due to her poor health.

"The effect of denying plaintiff's claim for benefits is in essence to penalize her for attempting, in spite of her disability, to make a positive social and economic contribution to her community. That effort, because of plaintiff's disability, was destined to fail, but to penalize plaintiff for *making* such an unsuccessful attempt is clearly outside the spirit of the Social Security Act.

"It is clear then that although plaintiff did secure temporary employment after the onset of her disabilities due to polio, that employment, because of disabilities

which *began* prior to her reaching age 18, was inevitably of a temporary nature and can in no way be considered substantial gainful employment which would preclude plaintiff's eligibility for benefits."

The same inequitable result would be reached if this Court were to deny the petitioner disability benefits because of his intermittent improvements.

 In 1974, Congress amended the Railroad Retirement Act to allow former disabled children to receive benefits once again if they reapply within seven years of their last entitlement (45 U.S.C. § 231a(d)(1)(iii)(C), Pub. L. No. 93–445, 88 Stat. 1305, 1974 U.S. Code Cong. & Admin. News, p. 1488). Again the Senate Report No. 93–215, 93rd Cong., 1st Sess., 1973 U.S. Code Cong. & Admin. News, p. 1563, stated that the purpose of this amendment was to provide the same benefits to railroad workers as other wage earners received with the 1972 Social Security Amendments. This provision only applies where a child was found eligible and then leaves the program. It in no way implies that benefits must be continuous from the last possible date at age 22. It merely clarifies the rights of those who leave the retirement rolls. To this extent, the provision is evidence of congressional intent to allow persons after age 22 to claim these benefits without a showing of continuous disability.

The Board also relies upon *Reyes v. Secretary of Health, Education and Welfare,* 155 U.S.App.D.C. 154, 476 F.2d 910 (1973), in which the claimant was denied an application for a child's disability insurance benefit under the Social Security Act (42 U.S.C. § 402(d)(1)). He had received some treatment for pulmonary tuberculosis in 1933 or 1934, when he was 11 or 12 years old, but the disease had been inactive or nonexistent thereafter until 1964, when it was detected and treated. Accordingly, the hearing examiner found that claimant's impairment was not of such severity before age 18 as to prevent him from engaging in substantial gainful work.

The facts in the case at hand are unlike those in *Reyes* in that the hearing examiner in *Reyes* had substantial evidence in the record upon which he could conclude that the condition either did not exist or was wholly inactive for thirty years. The Social Security regulations in effect at that time had a special provision that pulmonary tuberculosis was not considered to be a disability if the disease was "inactive" or "quiescent." Such is not the case here.

We reverse the decision of the Railroad Retirement Board in denying petitioner a disabled child's insurance annuity. The Board's decision was not based upon substantial evidence. From the evidence, it clearly appears petitioner was suffering from a continuous condition, despite his hospital employment. This condition having become disabling before age 22, slight periods of temporary improvement would not deprive him of the benefits of the Act.