Mary Sue ESTES, Petitioner,

v.

RAILROAD RETIREMENT
BOARD, Respondent.

No. 85–7075.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 11, 1985.

Decided Nov. 22, 1985.

William P. Driscoll, Helena, Mont., for petitioner.

Karl T. Blank, Steven A. Bartholow, Dep. Atty. Gen., U.S. Railroad Retirement Bd., Chicago, Ill., for respondent.

Before SKOPIL, PREGERSON, and WIGGINS, Circuit Judges.

PREGERSON, Circuit Judge:

Mary Sue Estes appeals the denial of her application for disability benefits under provisions of the Railroad Retirement Act of 1974 (RRA) authorizing payment of an annuity to the child of a deceased employee covered by the RRA if the child was disabled before reaching the age of twenty-two.[1] The Railroad Retirement Board (RRB) denied Estes' application on the ground that she was not disabled before she was twenty-two. We reverse.

---

1. The RRA provides in pertinent part:

The following described survivors of a deceased employee who will have completed ten years of service and will have had a current connection with the railroad industry at the time of his death shall, ... be entitled to annuities, if they have filed application therefor, in the amounts provided under section 231c of this title—

(iii) a child ... of such a deceased employee who ... (C) will, without regard to his age, be *under a disability which began before he attained age twenty-two* ..., and who is unmarried and was dependent upon the employee at the time of the employee's death....

45 U.S.C. § 231a(d)(1)(iii) (emphasis added).

## BACKGROUND

Estes, the child of a covered employee, was born on March 22, 1955. She currently suffers from chronic multiple sclerosis and is confined to a wheelchair. A review of the facts is necessary to determine whether Estes was disabled when she reached her twenty-second birthday on March 22, 1977.

The medical evidence establishes that Estes was afflicted with multiple sclerosis by 1973. When it was first diagnosed in 1976, the disease had already caused Estes to suffer severe symptoms: foot-drop, visual problems, sensory defects in the lower extremities, and abnormal fatigue. In July of 1976, Estes was hospitalized and treated with adrenocorticotrophic hormone (ACTH); her symptoms improved slightly.

She attended school that summer but because of her physical condition was only able to take afternoon classes. In the fall of 1976, she obtained work as a clerk at a car dealership. Again, her illness severely hindered her efforts; she was easily fatigued and neglected her work. Estes testified that she was able to continue working only because a sympathetic supervisor assumed some of her tasks.

After Estes turned twenty-two her condition worsened. She was again hospitalized in July of 1977 with persistent numbness in her right hand and foot as well as pain in moving her right eye. Her symptoms were again treated with ACTH. She thereafter left her job at the car dealership, and since then has only briefly held two part-time jobs. She attended college intermittently until 1979.

As is generally true of multiple sclerosis victims, Estes' progressively disabling condition was characterized by periods of remission and exacerbation. Between 1976 and 1980, Estes suffered numerous symptoms of varying severity. In periods of remission some of her symptoms would regress or even disappear. Her condition, however, deteriorated markedly in the first half of 1980 and in April of that year she was deemed disabled by the Social Security Administration when she applied for Social Security disability benefits.[2]

Estes then applied for a disabled child's annuity under the RRA on September 8, 1981. The application was initially denied by the Bureau of Retirement Claims and later upheld on reconsideration by the Bureau. The denial was sustained at a hearing before an appeals referee, who determined that Estes was not "disabled" until May of 1980. This decision was affirmed by the RRB over a strong dissent. Estes then appealed to this court.

## DISCUSSION

### A. *Standard of Review*

This Court will not set aside a decision of the RRB "if it is supported by substantial evidence, is not arbitrary and has a reasonable basis in law." *Akins v. Railroad Retirement Board*, 721 F.2d 652, 653 (9th Cir.1983); *Lowe v. Railroad Retirement Board*, 294 F.2d 115, 116 (9th Cir.1961) (per curiam).

### B. *Eligibility*

At the outset we address the proper standard for determining Estes' eligibility for benefits under the RRA. 45 U.S.C. § 231a(d)(1)(iii) entitles the child of a covered employee to benefits if the child is "under a disability which began before he attained the age of twenty-two." Under the RRB regulations, a person is under a "disability" if he or she is unable to regularly perform "the substantial and material duties of any regular and gainful employment." 20 C.F.R. § 208.17(a).[3] According-

---

**2.** Estes is currently receiving Social Security benefits. It is unclear from the record whether the Social Security benefits Estes now receives are supplemental security income or disability benefits based on her own earnings record.

**3.** This section provides:

An individual shall be deemed to be permanently disabled for work in any regular employment if he has a permanent physical or mental condition ... and he is because of such condition unable to perform regularly, in the usual and customary manner, the substantial and material duties of any regular and gainful employment which is substantial and not trifling, whether or not subject to the act.

ly, we must determine whether Estes' condition prevented her from regularly engaging in substantial gainful employment prior to March 22, 1977.

### C. Onset of the Disability

█ In applying the RRA disability standard to the facts of this case, we note that its interpretation is before us for the first time. Language identical to the RRA standard, however, appears in the disability provisions of the Social Security Act (SSA). 42 U.S.C. § 402(d)(1)(B) (applicant must be "under a disability ... which began before he attained the age of 22"). Similarly, the SSA standard for disability is whether the applicant can "engage in any substantial gainful activity...." 42 U.S.C. § 423(d). Accordingly, the RRB itself uses the Social Security Administration's regulations in determining disability under the RRA, and SSA cases are persuasive precedent in RRA disability cases. *See, e.g., Goodwin v. Railroad Retirement Board,* 546 F.2d 1169, 1172 (5th Cir.1977); *Parker v. Railroad Retirement Board,* 441 F.2d 460, 463 n. 6 (7th Cir.1971); *Duncan v. Railroad Retirement Board,* 375 F.2d 915, 917–18 (4th Cir.1967). In particular, we find the Sixth Circuit's well-reasoned application of the SSA standard to a multiple sclerosis victim in *Parish v. Califano,* 642 F.2d 188 (6th Cir.1981), directly applicable to the facts in this case.

█ There is no dispute that Estes is now disabled by multiple sclerosis and that the condition existed before she was twenty-two. The RRB contends, however, that the condition did not become disabling until after Estes reached twenty-two; that is, she was able to engage in substantial gainful employment up to March 22, 1977.

The record indicates that before Estes was twenty-two she had experienced footdrop, sensory problems in both lower extremities, visual problems in her left eye, and abnormal fatigue. While she worked at a car dealership for several months prior to her twenty-second birthday, her illness rendered her job performance inadequate. The appeals referee, while noting that healthy activity occurred "[i]n the periods of remission of her disease," nevertheless found that the condition had not become disabling until 1980.

This conclusion is untenable in light of *Parish,* which is the only case under the RRA or SSA applying an age requirement to a progressively disabling disease like multiple sclerosis. The question before the *Parish* court was whether normal activity in a period of remission established "substantial gainful activity" under the SSA disability standard. Like Estes, the petitioner in *Parish* suffered from multiple sclerosis before reaching twenty-two but was able to work and attend school in periods of remission. *Parish,* 642 F.2d at 190–92. The Social Security Administration argued that such activity after reaching the age of twenty-two indicated that the petitioner in *Parish* was not disabled until after she reached her twenty-second birthday. The administrative judge in *Parish,* like the referee in this case, relied on the petitioner's employment in finding that the disease had not prevented substantial gainful activity by the petitioner. *Id.* at 192–93.

The Sixth Circuit reversed, holding that "[t]he fact that plaintiff worked ... is not necessarily substantial evidence of substantial gainful activity." *Id.* at 192. The Sixth Circuit properly observed that multiple sclerosis can be disabling notwithstanding normal activity in periods of remission. The court said:

> Multiple sclerosis is an incurable progressive disease subject to such periods of remission and exacerbation.... Because [the period when petitioner worked and attended school] was unquestionably a period of remission, we believe the ALJ erred in placing undue reliance on this *brief and temporary interruption of plaintiff's progressively disabling condition.* Rather, he should have considered that time-span as merely a *period of remission in a continuing disability....*

*Parish,* at 193 (emphasis added).

We find the instant case essentially indistinguishable from *Parish.* Estes' employment during 1976 and early 1977 most like-

ly occurred in a remission period. She had previously suffered severe symptoms, and in July of 1977 was again hospitalized as a result of even more serious disabilities. Under the logic of *Parish*, it appears that Estes was suffering from a progressive disability by 1976, her twenty-first year. That the next year was a period of remission, rather than exacerbation, does not alter the fact that she was indeed suffering from a disability. The fact that a disabled multiple sclerosis victim was employed during a remission period, especially where the victim's performance was inadequate, does not establish substantial gainful employment. *Parish*, at 191–92; *see also Goodwin v. Railroad Retirement Board*, 546 F.2d 1169, 1171 (5th Cir.1977) (applicant disabled despite employment where job performance was inadequate and environment was sheltered and sympathetic).

## CONCLUSION

Neither the appeals referee nor the RRB applied the principles enunciated in *Parish* to the facts of this case. Their reliance on Estes' activity in periods of remission as establishing substantial gainful employment is misplaced. The record, viewed in light of the sound principles elaborated in *Parish*, establishes that Estes was disabled by multiple sclerosis by March 22, 1977.

Accordingly, we reverse the decision below and remand to the Bureau of Retirement Claims so that they may determine the amount of benefits to which Estes is entitled.

REVERSED and REMANDED.

WIGGINS, Circuit Judge, dissenting:

I agree with the majority's statement of the law and its statement of the facts. Because the majority does not correctly apply that law to those facts, however, I must dissent.

The majority properly concludes that Ms. Estes is eligible for the disabled child's annuity only if she was under a disability at the time of her twenty-second birthday. On or before that date, she must have been prevented by her condition from regularly engaging in substantial gainful activity.

Based on the record as a whole, however, there is substantial evidence to support the RRB's finding that Estes was not in fact disabled on or before reaching age twenty-two. Because the finding is supported by substantial evidence, we should not disturb it, even if we might reach a different conclusion looking at the question afresh. *See Atkins v. Railroad Retirement Board*, 721 F.2d 652, 653 (9th Cir.1983).

According to the facts as recited by the majority, Estes was diagnosed as suffering from multiple sclerosis in 1976. Before her twenty-second birthday in 1977, she had experienced foot-drop, visual problems, sensory defects in the lower extremities, and abnormal fatigue. Although she worked and went to school during this time, the fatigue forced her to take afternoon classes only and, she testified, severely hindered her work as a clerk in a car dealership. This is the full extent of the evidence in the record on Estes' pre-age 22 condition; the conclusion that she was disabled before that age must therefore be based solely on this evidence. Any subsequent deterioration in her condition is immaterial.

The majority states that the referee in this case "relied on the petitioner's employment in finding that the disease had not prevented substantial gainful activity," *ante*, and notes that employment is not necessarily substantial evidence of substantial gainful activity. *Ante* (quoting *Parish* ). Nevertheless, employment also obviously *can be* substantial evidence of substantial gainful activity. *See, e.g., Harmon v. Finch*, 460 F.2d 1229, 1231 (9th Cir.) *cert. denied*, 409 U.S. 1063, 93 S.Ct. 571, 34 L.Ed.2d 516 (1972); 20 C.F.R. § 404.1574(b)(2) (1985) (listing earning levels that will ordinarily show that a person has engaged in substantial gainful activity). Here, the referee considered the type and duration of the job Estes held, her uncorroborated statement that her work was inadequate and was accomplished only through the kindness of a coemployee, and her statement to a doctor that she left the job for reasons other than her multiple sclerosis. In addition, Estes' earnings for her work at the car dealership averaged

approximately $408 per month, well above the $230 and $240 per month averages that create a presumption of substantial gainful activity for 1976 and 1977. 20 C.F.R. § 404.1574(b)(2)(ii) & (iii) (1985). Although we might reach a different conclusion, the referee's finding that Estes' employment constituted substantial gainful activity is clearly supported by substantial evidence.

Furthermore, the referee did not, as the majority apparently assumes, rely solely on Estes' employment in finding that she was not disabled before her twenty-second birthday. The referee also compared Estes' condition to those conditions found in the Social Security regulations defining what symptoms and levels of advancement of various diseases constitute "disability" for the purpose of Social Security benefits.[1] The listing for multiple sclerosis is found at 20 C.F.R. Part 404, Subpart P, Appendix I § 11.09 (1985). That regulation specifies particular disabilities, including significant and persistent disorganization of the motor function in two extremities that results in sustained disturbance of gross and dextrous movements, or gait and station; severe impairment of central visual acuity; and other physical and mental functions. Evaluation of these criteria includes consideration of the frequency and length of exacerbations, length of remissions, and permanent residual effects. *Id.* at § 11.00(D). Based on the symptoms listed by the majority, the appeals referee found:

> [D]uring these years, (1976–1979) her symptoms and findings were not so severe as to meet the level of severity as indicated in the Social Security Listing 11.09.

The majority overturns this finding, but it does not point out why. Instead, the majority relies on the simple existence of multiple sclerosis to arrive at its finding of disability. The existence of the disease alone, however, does not constitute a "disability" unless it prevents substantial gainful activity, *Dunlap v. Harris,* 649 F.2d 637, 638–39 (8th Cir.1981), and the majority

does not explain how the symptoms it describes so operate.

Nor, despite the majority's assertions, is reversal here justified by the remission/relapse nature of multiple sclerosis. Both the *Parish* court, 642 F.2d at 193, and the majority here correctly note that a brief period of remission in an otherwise progressively debilitating disease does not disqualify an otherwise eligible applicant. Indeed, this is the only equitable result; to hold otherwise would defeat the purpose of the disabled child annuity and leave an applicant's eligibility to the fortuity of her twenty-second birthday falling in a period of relapse instead of remission. In Estes' case, however, the question is not whether Estes' work as a clerk fell within a period of remission, but whether her condition, even before that remission, ever reached a disabling level. Based on the symptoms described by the majority, the RRB could reasonably conclude it did not.

The petitioner is now severely disabled. She presents a claim which makes a strong appeal to our sympathies. And yet, in such hard cases, we must be especially alert to avoid making bad law.

Here, there can be little doubt that the finding of no disability on Ms. Estes' 22nd birthday was supported by substantial evidence. That is all we must decide. The understandable concern of this Court, and of society, for the long-term care of disabled persons is not at issue here. What is at issue is our adherence to settled principles for the review of factual determinations by the Railroad Retirement Board. With all respect, I believe the majority has disregarded those principles. I therefore dissent.

---

1. As the majority points out, the RRB and the courts use the SSA regulations in determining

disability under the RRA.