**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAMUEL P. STEPHENS, JR.,<br>*Petitioner*,<br><br>v.<br><br>U. S. RAILROAD RETIREMENT<br>BOARD,<br>*Respondent*. | No. 11-70649<br><br>RRB No.<br>10-AP-0049<br><br>OPINION |

On Petition for Review of an Order of the
Railroad Retirement Board

Argued and Submitted
July 12, 2012—Seattle, Washington

Filed November 21, 2012

Before: Mary M. Schroeder, Stephen Reinhardt,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Schroeder;
Dissent by Judge M. Smith

# SUMMARY[*]

## Railroad Retirement Act

The panel reversed a decision of the United States Railroad Retirement Board that denied an application for benefits under the Railroad Retirement Act, and remanded for further proceedings.

The Railroad Retirement Act provides an annuity for disabled children of railroad workers, and the Board ruled that claimant did not qualify for benefits because during three out of the 30 years preceding his application, he worked at three menial jobs which constituted gainful employment that disqualified him from eligibility. The panel held that short periods of temporary employment, inadequately performed, do not constitute substantial gainful employment that would disqualify a claimant for benefits. The panel further held that when considering the Railroad Retirement Act's requirement of continuous disability, the court must look to the history of the claimant's disability and the claimant's success or lack thereof in sustaining meaningful employment. The panel concluded that claimant was entitled to benefits.

Judge M. Smith dissented. Judge Smith wrote that because the Board's decision is supported by substantial evidence, is not arbitrary, and has a reasonable basis in law, it must be upheld.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

David E. Chawes, Seattle, Washington, for petitioner Samuel P. Stephens, Jr.

Michele L. Bopp, Chicago, Illinois, for respondent U.S. Railroad Retirement Board.

---

**OPINION**

SCHROEDER, Circuit Judge:

This is a relatively rare petition to review a decision of the United States Railroad Retirement Board denying an application for benefits under the Railroad Retirement Act ("RRA").  45 U.S.C. § 231 *et seq*.  The RRA provides an annuity for disabled children of railroad workers.  To qualify for benefits, the child must have been disabled prior to the age of 22 and have remained continuously disabled through the time of application for benefits.  45 U.S.C. § 231a; 20 C.F.R. § 216.71(d)(2)(i).

The Board ruled the petitioner, Samuel Stephens, did not qualify because during three out of the 30 years preceding his application, he worked at three menial jobs.  Even though he was fired from each, the Board ruled that the work constituted gainful employment that disqualified him from eligibility.  The Board majority looked solely to the Board's regulations, which set forth guidelines for the amounts of average monthly earnings that generally indicate substantial gainful activity.  Because Stephens's earnings exceeded that average between 1986 and 1989, the Board majority concluded he had not been continuously disabled.  The Board did not, as the

dissent contends, affirm or adopt the totality of the decision of the hearings officer. The hearings officer had also concluded that Stephens was not disabled before he was 22 by relying solely on a purported lack of medical records, even though psychiatric evaluations dating to age 14 demonstrated severe psychiatric problems that prevented him from successfully completing even special education. The Board did not discuss that issue. It relied exclusively on Stephens's limited work experience after age 22, citing "evidence showing that Mr. Stephens performed substantial gainful activity in the years 1987-1989," when Stephens was in his mid-20's, to conclude that he had not been continuously disabled.

The dissenting Board member would not have viewed such earnings in isolation and would have granted benefits, looking to Stephens's long history of mental and physical problems and unsuccessful attempts to work. The record amply documents that long history of mental, emotional and physical problems. The petitioner, the son of a deceased railroad worker, was diagnosed at the age of 14 by a medical doctor as having severe mental and emotional problems. The doctor found that Stephens was "at the low end of the borderline range" intellectually. When Stephens was 15, a psychologist recommended he be taken out of public school and enrolled in a special school for children with emotional problems. The psychologist noted that Stephens had "only a tenuous grasp on reality" and was "unable [to] differentiate reality from fantasy decisively." Although the doctors suggested that Stephens might have greater mental abilities than shown by the test scores, he dropped out of the special school in the ninth grade in about 1982 after repeating two grades and failing many classes. He did not complete any further education.

Stephens testified that he attempted to work between 1983 and 1986, but failed, and the Social Security records show that he earned no money.  Between 1986 and 1989, Stephens managed to hold on to three minimum-wage jobs for only limited periods before being fired from each.  For parts of 1986 and 1987, he worked at Harston Hall Nursing Home, mopping floors, folding towels, and carrying bags of laundry up and down the stairs.  He was closely supervised and given reduced responsibilities, but even so he missed many days of work, was often sent home early, and was ultimately fired.  During 1987 and 1988, he worked at a parking garage as a janitor and errand runner.  Again, he was closely supervised and often missed work.  He was fired after stealing $400 that he had been told to deposit at a bank.  In 1989, he worked briefly at a Days Inn hotel.  There, in addition to being closely supervised, he was given about a third of the workload of other employees.  Nevertheless, he often missed work and was eventually fired.

After being fired from the Days Inn, Stephens was homeless.  According to his Social Security records he made about eleven work attempts between 1990 and 1997, but his tenure at each job was short lived, and his earnings were inconsequential.  He has received Social Security disability benefits since 1995.

The critical issue in the case is the significance of Stephens's earnings prior to his application for RRA benefits. The Board majority viewed these earnings as dispositive of the issue of continuous disability.  In doing so, the Board committed legal error.  The regulations, particularly when read in the light of our case law, are not so rigid.

The regulations provide, at best, a presumption that one who earns more than the prescribed amount per month has been gainfully employed. They provide that, as a "guide," monthly earnings averages over a certain amount will "*ordinarily* show that the claimant has engaged in substantial gainful activity." 20 C.F.R. § 220.143 (emphasis added). For the years 1980-1989, the average earnings amount that would trigger the presumption is $300 per month. *Id.* The regulation's plain language forecloses the Board's interpretation of it to deem Stephens's earnings dispositive. This reading of the regulation, therefore, is not entitled to deference under *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

The regulations focus on the amount of earnings that would presumptively, but not conclusively, establish gainful activity when the claimant received them. The case law therefore requires the Board to consider not only the amount an applicant has earned, but also the context in which those earnings were received. The Board did not do so here. It ignored our precedent holding that temporary, unsuccessful attempts at employment do not foreclose a disability claim.

Our circuit's leading case is *Estes v. Railroad Retirement Board*, 776 F.2d 1436 (9th Cir. 1985). The issue was whether the applicant's multiple sclerosis caused her to be disabled before she was 22. Looking to the nature of her disease, a progressively disabling condition with periods of remission, we held that work accomplished during a period of remission was not substantial gainful activity that would disqualify her from benefits, *id.* at 1439, even though, as the dissent noted, she earned more than the regulations' presumptive amount, *see id.* at 1440 (Wiggins, C.J., dissenting). The majority in *Estes* relied on a Sixth Circuit decision, *Parish v. Califano*,

642 F.2d 188 (6th Cir. 1981), that also held that temporary employment was not sufficient to defeat a disability claim.

The facts in *Estes* were similar to this case in that Estes was not able successfully to perform the work she did attempt, and a supervisor had to reduce her work load. We said "[t]he fact that a disabled multiple sclerosis victim was employed during a remission period, especially where the victim's performance was inadequate, does not establish substantial gainful employment." *Estes*, 776 F.2d at 1439. Short periods of temporary employment, inadequately performed, thus do not constitute substantial gainful employment that would disqualify a claimant for benefits.

Our decision in *Estes* also relied upon a leading Fifth Circuit case, *Goodwin v. Railroad Retirement Board*, 546 F.2d 1169 (5th Cir. 1977), in which a claimant managed to work for six years, but his shortcomings and need for assistance from others caused the court to hold that the employment was not substantial gainful activity that would prevent his eligibility for benefits. The Fifth Circuit rejected the Board's contention that a period of employment automatically disqualified the petitioner for benefits, reasoning that "the evidence taken as a whole clearly shows the petitioner's lack of fitness for substantial regular employment." *Id.* at 1171. The court held that, despite his period of employment, "petitioner's disability began before age 22 and he is disabled today," and concluded that "[i]t would be carrying the statute to an absurdity to deny him his benefits because of his short periods of temporary improvement." *Id.* at 1172. Here the claimant never experienced even short periods of temporary improvement.

The RRA has borrowed many of its concepts from Social Security law, and so cases decided under that statute can be instructive. *Estes*, 776 F.2d at 1438. Our court confronted a situation similar to Stephens's in *Gatliff v. Commissioner of the Social Security Administration*, 172 F.3d 690 (9th Cir. 1999). We characterized the issue as whether "a string of sequential, short-term jobs constitute 'substantial gainful activity.'" *Id.* at 691. Concluding that it could not, we stated that "substantial employment cannot be pieced together from a collection of insubstantial attempts." *Id.* That holding applies here. The point is reinforced by *Byington v. Chater,* 76 F.3d 246, 251 (9th Cir. 1996), where an applicant was denied benefits because his employment during the relevant period had been so successful that he had received a promotion. The dissent's reliance on *Byington* is therefore inappropriate.

The medical evidence provides no support for the Board's denial. There is no medical evidence showing that Stephens is able to work. Stephens's treating physician states that Stephens's mental disabilities prevent him from working. His education and work history demonstrate this has been the case ever since he was a teenager.

The Social Security Act "is remedial and its humanitarian aims necessitate that it be construed broadly and applied liberally." *Adams v. Weinberger*, 521 F.2d 656, 659 (2d Cir. 1975). This court has held that a disability may be continuous under the Social Security Act even if it is punctuated by unsuccessful attempts to work. In such a case, the petitioner's attempts "demonstrate not his ability, but his inability to engage in substantial gainful activity." *Gatliff*, 172 F.3d at 694 (quoting *Wilson v. Richardson*, 455 F.2d 304, 307 (4th Cir. 1972)). So too, when considering the RRA's

requirement of continuous disability, we must look to the history of the petitioner's disability and the petitioner's success or lack thereof in sustaining meaningful employment. Despite periods of unsuccessful employment, so long as the claimant satisfies all the other requirements of the Act, as Stephens undisputedly does here, the claimant is entitled to benefits.

The decision of the Board is **REVERSED** and the matter **REMANDED** for further proceedings consistent with this opinion.

M. SMITH, Circuit Judge, dissenting:

The majority improperly reverses the United States Railroad Retirement Board's (the RRB) decision in this case without giving appropriate weight to the deferential substantial evidence standard under which the agency's decisions ought to be reviewed, or considering the claimant's burden of proving disability. Controlling case law provides that the RRB's decision will not be set aside "if it is supported by substantial evidence, is not arbitrary, and has a reasonable basis in law." *Akins v. U.S. R.R. Ret. Bd.*, 721 F.2d 652, 653 (9th Cir. 1983). Under binding precedent, our review must be highly deferential, not de novo as the majority appears to believe. *See Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 149 (1997) (O'Connor, J., dissenting) ("The substantial evidence standard is extremely deferential to the factfinder . . . . It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (citation and quotes omitted)); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) ("Substantial evidence is defined as 'more than a mere scintilla but less than a

preponderance.'" (citation omitted)).   Most significantly, regardless of how sympathetic the situation of a petitioner may be, "we may not substitute our judgment for that of the Board." *Elzy v. R.R. Ret. Bd.*, 782 F.2d 1223, 1224 (5th Cir. 1986).   Because the RRB's decision is supported by substantial evidence, is not arbitrary, and has a reasonable basis in law, it must be upheld.  *See Akins*, 721 F.2d at 653. Accordingly, I respectfully dissent from the majority's reversal of the RRB's decision in this case.

Petitioner Samuel P. Stephens, Jr. (Stephens) is not entitled to an annuity for two reasons: (1) he failed to carry his burden of proving that, prior to age 22, he was disabled such that he could not work, and (2) since he was employed from 1986 to 1989, he cannot show a continuous disability after age 22 that precluded substantial gainful activity. Moreover, even if we believe that the issues are closely divided, we must accord the RRB's decision the benefit of the doubt under our deferential standard of review.  *See id.*

A child of a deceased railroad employee is entitled to an annuity if he "will, without regard to his age, be under a disability which began before he attained age twenty-two" and "is unmarried and was dependent upon the employee at the time of the employee's death."    45 U.S.C. § 231a(d)(1)(iii)(C).  A child is considered "under a disability if her or his permanent physical or mental condition is such that she or he is unable to engage in any regular employment."    *Id.* § 231a(d)(3).   "The claimant for a disability annuity is responsible for providing evidence of the claimed disability and the effect of the disability on the ability to work."  20 C.F.R. § 220.45(a).

Under the relevant regulation, Stephens had to demonstrate (1) that he was "disabled . . . before attaining age 22," and (2) that "the disability . . . continue[d] through the time of application for benefits." *Id.* § 216.71(d)(2)(i). If he was able to engage in substantial gainful activity, he was not disabled for any regular employment under the Railroad Retirement Act (RRA), 45 U.S.C. §§ 231 *et seq*. *Id.* § 220.140.

The RRB's implementing regulation, 20 C.F.R. § 220.143, provides a guideline to determine whether a person who was employed engaged in substantial gainful activity. The regulation provides that evidence of a person earning more than $300 per month on average while working between 1980 and 1989 "will ordinarily show that the claimant has engaged in substantial gainful activity." *Id.* § 220.143(b)(2). In contrast, a person who earned less than $190 per month on average presumably did not engage in substantial gainful activity. *See id.* § 220.143(b)(3). If the person earned between $191 and $299, the RRB will generally consider other information before making a decision. *See id.* § 220.143(b)(6)(i).

Here, the RRB found that "the evidence fails to show that Mr. Stephens has been continuously disabled since before attaining the age of twenty-two to the time of his application for the annuity, due to evidence showing that Mr. Stephens performed substantial gainful activity in the years 1987–1989." The RRB thus appears to have denied Stephens an annuity primarily because of evidence showing that Stephens was gainfully employed during the 1980s, after he reached age 22 but before he filed an application for benefits. Moreover, the hearings officer had ruled, in the alternative, that "[e]ven if the appellant was found not to be engaging in

substantial gainful activity the evidence does not support that he has been continuously disabled since before age 22." The RRB expressly affirmed and adopted the decision of the hearings officer, although it did so without independently assessing whether the evidence supported finding that Stephens was disabled before age 22. Where, as here, the RRB adopts the hearings officer's opinion without issuing further findings, the court evaluates the judgment of the hearings officer. *See Dray v. R.R. Ret. Bd.*, 10 F.3d 1306, 1310 (7th Cir. 1993). Accordingly, the RRB's decision may be affirmed on two separate grounds: (1) Stephens's lack of evidence that he was continuously disabled before age 22, and (2) Stephens's work after age 22, constituting substantial gainful employment. If either finding is supported by substantial evidence, Stephens cannot prevail. *See Akins*, 721 F.2d at 653; 20 C.F.R. § 216.71(d)(2)(i).

## I.   Disability Before Age 22

The record contains medical evidence susceptible to different reasonable interpretations about whether Stephens had a continuous disability before turning 22 years old that would preclude him from working. The weighing of conflicting medical evidence is a fact-intensive inquiry implicating the RRB's expertise and requiring an ability to discern sound from unsound medical conclusions that courts may lack. Our deference to the RRB should be at its peak, not its nadir, in reviewing such an agency determination. *See Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008) (en banc). We are appellate judges, not physicians.

Dr. Diane Smityh (Dr. Smityh), who examined Stephens in 1975 when he was 14 years old, indicated that Stephens was emotionally troubled, but she did not discuss how long

his emotional problems would last. She also opined that Stephens's overall intellectual functioning and verbal and performance scale scores were within "the borderline range," albeit "at the low end," but noted that his range of verbal scale scores was "strongly indicative of higher than measured ability."

Dr. Thomas S. Wright (Dr. Wright), the other doctor who evaluated Stephens before he reached age 22, reported in 1976 when Stephens was 15 years old, that "there were no signs of symptoms of psychosis, mental illness or severe emotional pathology." Although Dr. Wright recommended that Stephens be enrolled in special education for the 1976–77 school year, he also concluded that Stephens "does appear to have adequate intellectual abilities, does seem to have personality strengths which could be maximized under proper conditions." Like Dr. Smityh, Dr. Wright never opined on how long Stephens's emotional problems would last or whether Stephens would be capable of working without improvement in his condition.

Although some evidence suggests that Stephens experienced difficulties that limited his success in school before age 22, a lack of academic success is not the touchstone for proving a disability. For purposes of the Railroad Retirement Act, a disability may only be shown by proof that a person has a "permanent physical or mental condition . . . such that she or he is unable to engage in any regular employment." 45 U.S.C. § 231a(d)(3); *see also Estes v. R.R. Ret. Bd.*, 776 F.2d 1436, 1437 (9th Cir. 1985) ("Under the RRB regulations, a person is under a 'disability' if he or she is unable to regularly perform 'the substantial and material duties of any regular and gainful employment.' " (citation omitted)). Millions of Americans with physical or

mental limitations regularly participate in the workforce, precluding them from satisfying the stringent definition of "disabled" under the RRA.[1]

The evidence simply does not conclusively demonstrate that Stephens, before age 22, was disabled such that he could not work, as he was required to prove to receive an annuity under the RRA. *See* 45 U.S.C. § 231a(d)(1)(iii)(C), (d)(3). Specifically, Stephens failed to produce reliable evidence discussing his mental health between the ages of 15 and 22 and whether his condition changed over time, or prevented him from working. Even if Stephens's testimony were considered, it does not compel a finding that he was disabled before the age of 22. Accordingly, I would hold that there is substantial evidence in the record to find that Stephens did not meet his burden of proving through medical evidence that he was disabled prior to the age of 22. The majority elides this part of the analysis, which independent of whether Stephens could prove disability after 22, is sufficient to affirm the RRB's denial of benefits under the Railroad Retirement Act.

## II. Disability After Age 22

Stephens also cannot prevail because substantial evidence supports the RRB's finding that, because of his employment from 1986 to 1989, he cannot show a continuous disability

---

[1] The Census Bureau estimates that approximately 56.7 million people (18.7% of the civilian non-institutionalized population) in the United States had a disability in 2010. *See* Matthew W. Brault, United States Census Bureau, *Americans with Disabilities: 2010*, at 4 (2012), *available at* http://www.census.gov/prod/2012pubs/p70-131.pdf. Over 12 million individuals with a disability between the ages of 21 and 64 were employed. *Id.*

after turning 22 years old.  Even if this were a close question, the majority errs by refusing to defer to the RRB, and instead, formulating its own unsupported hypothesis as to the severity and duration of Stephens's medical problems.  To reiterate, we are a court, not a blue-ribbon tribunal of leading physicians.  Our task is limited to determining whether the RRB could have reasonably concluded that Stephens was not continuously disabled.  *See Tackett,* 180 F.3d at 1098; *Akins*, 721 F.2d at 653.  Even if reasonable minds could disagree, our deferential standard requires that the agency prevail.  *See Tackett,* 180 F.3d at 1098; *Akins*, 721 F.2d at 653.

Beginning in 1986, Stephens began working for Harston Hall Nursing & Convalescent Home Inc. (Harston Hall).  In 1987, Stephens earned $4,946.38 from Harston Hall, and $1,186.88 from Park America Inc., for a total of $6,133.26.  Stephens also earned $4,263.56 in 1988 and $5,081.95 in 1989.  These amounts are all well above the $300 per month average for a calendar year in the 1980s that the RRB ordinarily considers sufficient evidence to show that a claimant engaged in substantial gainful activity.  *See* 20 C.F.R. § 220.143(b)(2).  On this basis alone, sufficient evidence supports the RRB's finding that Stephens engaged in substantial gainful activity in the 1980s, thereby precluding him from establishing a continuous disability between the age of 22 and the time of his application for benefits.  Based on Stephens's Social Security earnings record, he was also either able to maintain a job for a significant period of time or to earn far more than the minimum wage at the time for his work.  This evidence further supports the RRB's finding that Stephens engaged in substantial gainful activity before applying for benefits.  Thus, Stephens was not disabled for purposes of the Railroad Retirement Act, and the RRB

properly denied him an annuity. *See* 45 U.S.C. § 231a(d)(1)(iii)(C); 20 C.F.R. §§ 216.71(d)(2)(i), 220.140.

The majority opines that the RRB failed to consider not only the amount a claimant has earned, but also the context in which those earnings were received. In so doing, the majority states that RRB committed legal error by ignoring our precedent holding that temporary, unsuccessful attempts at employment do not foreclose a disability claim. However, the cases the majority relies on for this proposition are easily distinguishable from the facts in this case. In *Estes*, the claimant only worked "for several months," and later, "briefly held two part-time jobs." 776 F.2d at 1437–38. Stephens, in contrast, worked for several years. Moreover, there was no dispute in *Estes* that the claimant suffered from multiple sclerosis, beginning when she was younger than twenty-two years old. *See id.* at 1438. In this case, the evidence about Stephens's medical condition is disputed. The claimant's medical condition in *Estes* was also known to be incurable, progressively disabling, and characterized by periods of remission and exacerbation. *See id.* In contrast, not only is Stephens's medical condition during the 1980s unknown, but there is certainly no claim that his condition, whatever it may have been, was an incurable, progressive disability with periods of remission and exacerbation. *Estes* is inapposite.

*Goodwin v. Railroad Retirement Board*, 546 F.2d 1169 (5th Cir. 1977) also misses the mark. In *Goodwin*, the claimant had "short periods of temporary improvement," and his "employment situation was not that of a normal worker." *Id.* at 1171–72. He worked under the guidance of his aunt in a hospital's dietary department; several of his uncles and neighbors were also employees of the dietary department at the time; his schedule was arranged to avoid putting stress on

him; and the hospital's president, a nun, noted that the sisters in charge of the department in which he worked were sympathetic toward him and overlooked many of his shortcomings. *Id.* at 1171. "The sheltered environment and special treatment he received at the hospital were not the type of working conditions that can be duplicated outside [a] family atmosphere." *Id.* Here, as the RRB and hearings officer concluded, Stephens's employment cannot be considered sheltered, and there is no evidence to corroborate Stephens's testimony that his employment was performed under special conditions. Moreover, the record does not demonstrate that Stephens's work during the 1980s occurred only because of a temporary improvement in his medical condition.

This is also not a case like *Gatliff v. Commissioner of Social Security Administration*, 172 F.3d 690 (9th Cir. 1999), where the claimant had 150 jobs, which generally lasted no more than 2 months over the course of 25 years. 172 F.3d at 691. As the hearings officer concluded, there is no evidence suggesting that Stephens's employment between 1987 and 1989 consisted of merely unsuccessful, short-lived attempts at working. Instead, the success Stephens enjoyed in obtaining and keeping the jobs he held during this period indicates that he was capable of substantial gainful employment.

The approach we applied in *Byington v. Chater*, 76 F.3d 246 (9th Cir. 1996) is more on point. In *Byington*, the claimant worked as a school bus driver in 1992 and earned wages in excess of $500 per month, thereby creating a presumption of substantial gainful activity. *See id.* at 251. We held that the claimant's testimony did not adequately rebut the presumption that he engaged in substantial gainful

activity in 1992, even though the claimant testified that he was slower than other drivers in completing his route, had concerns about his breathing condition, and occasionally needed to stop the bus and stretch his legs by walking. *See id.* Just as the claimant in *Byington*, Stephens testified that he was slower than other workers and did not do a good job as an employee. Thus, I believe we should follow *Byington,* and hold that Stephens's testimony—even if accepted at face value—is not sufficient to rebut the presumption that his work during the 1980s was substantial gainful activity, thereby precluding him from showing a continuous disability.

## III.   Conclusion

I would hold that Stephens cannot prevail because substantial evidence supports the RRB's conclusions that Stephens did not establish a continuous disability either before or after age 22. *See* 20 C.F.R. § 216.71(d)(2)(i). The Railroad Retirement Act may be remedial and seek to promote humanitarian aims, but we are bound by the text of the statute and its implementing regulations. The majority errs in reversing the RRB simply because some evidence, including his testimony, suggests that Stephens was disabled. *See Pemberton v. R.R. Ret. Bd.*, 108 F.3d 189, 193 (8th Cir. 1997) ("[T]he [RRB's] decision will not be reversed simply because substantial evidence may support the opposite conclusion."). In a case such as this, the agency is entitled to the benefit of the doubt. *See Akins*, 721 F.2d at 653. Sympathy for Stephens should not trump the deference to which the RRB is entitled under the law.

I respectfully dissent.